Bartram *v.* Stone.

---

## CHARLES BARTRAM *vs.* LEE STONE.

In an action for an assault and battery, the plaintiff may prove the previous threats of the defendant to make the assault, both for the purpose of proving that the defendant made the assault, and to prove that it was maliciously made.

Such a threat may have become of little importance, either from the time elapsing before the assault, or from other causes, but upon principle a threat to do an act can never be rejected as irrelevant where the issue is whether the party making the threat did the act.

And where it is material to show the animus with which an act was done, both the prior and subsequent declarations of the party doing the act, as well as those which accompany the act, are admissible.

It is of no importance whether the plaintiff knew of the threats before the assault or not.

In an action for an assault and battery the defendant may prove, in mitigation of damages, that the plaintiff immediately before the assault charged him with a crime.

But the plaintiff can not be permitted in reply to go into proof that the charge was true.

Nor·can the defendant be allowed to go into proof that the charge was false.

The evidence is admissible solely for the purpose of showing that the defendant acted under the sudden provocation of the charge, and not from premeditated malice.

ACTION for an assault and battery; tried to the jury in the superior court on the general issue, before *Seymour, J.* Verdict for the plaintiff; motion for a new trial by the defendant. The case will be sufficiently understood from the opinion.

*Orton* and *Turrill*, in support of the motion.

*Chittenden*, with whom was *Graves*, contra.

SANFORD, J.   In an action for an assault and battery, tried upon the defendant's plea of the general issue, the plaintiff offered and the court received evidence to prove, that, prior to the trespass complained of, the defendant had threatened the assault.   These threats were not made in the plaintiff's presence, and there was no evidence that he had been informed of them when the assault was made.   The defendant objected to the evidence because the threats, being made before the trespass, and not in the presence of the plaintiff, were no part of the transaction on account of which the suit was brought.

We think the evidence was not objectionable on the ground claimed, nor on any other.

Evidence which in any degree tends to prove the issue on trial is always to be received and submitted to the consideration of the triers.   The declaration of a party after the commission of a wrong, that he participated in its perpetration, is evidence against him, because he must of necessity know what he did, and because it is to be presumed that a rational being

will not accuse himself falsely, or by his own voluntary admission, declaration or confession, without cause, subject himself to penal consequences or pecuniary loss.   And the declaration of a party prior to the commission of a wrong, that he intends to perpetrate it, is evidence against him, because it is presumed that the feelings and purposes which such declaration indicates do in fact exist, and impel such utterance, and because a state of feeling once proved to exist is presumed to continue until some change is shown.   The length of time that may have elapsed between the declaration of the purpose and its consummation, as well as all the circumstances attending such declaration, are to be taken into consideration in determining the weight and importance of such declaration ; and the intervening time may be so great, or the other circumstances of such a character, as to render the declaration of little value; but, upon principle, the declaration of an intention to do the act in question can never be rejected as irrelevant to the issue, when that issue is whether the party making such declaration did the act or not.

And when it is material to show the *animus* of a party in the doing of an act in order to enhance the damages, or for any other lawful purpose, the prior and subsequent declarations of such party, as well as those which accompany the act, are always legitimate evidence ; not indeed for the mere purpose of showing what the feelings of the party were either before or after the commission of the act, but as facts from which to infer what they were at the time of the act committed.

Evidence of this kind is constantly received.   Evidence of a testator's mental condition before and after the publication of his will, is always received to show what it was when the will was made.   So where the existence of malice is essential to the maintenance of the suit, as in actions for malicious prosecutions, vexatious law suits, libels, slander, &c., as well as in prosecutions for murder, such evidence is always received.

Evidence of threats therefore is not objectionable because the threats were uttered before the commission of the threatened act.   No action can be maintained for their utterance

alone. Nor should damages be increased either because they were uttered, or because the party then entertained the malicious motive which inspired them. Evidence of their utterance is admissible only because it conduces to prove a fact— that the malicious motive then existed; and from that fact the inference may be deduced that the same malicious motive continued to exist until the threatened deed was perpetrated.

This evidence then was properly received because it conduced to prove a fact, from which a legitimate inference was fairly deducible that the defendant committed the assault and that it was premeditated and malicious.

It needs no argument or authority to show that for a premeditated malicious battery larger damages ought to be awarded than for a personal injury resulting rather from accident than design, or produced by unjustifiable and immediate provocation from the injured party. Our courts have never adopted the rigid rule contended for by the counsel, that no more than the actual damage done to the plaintiff by a battery or any other trespass should ever be recovered by him. Exemplary damages have been allowed in proper cases from the first institution of courts among us.

It is contended that the evidence was inadmissible because the *threats* were no part of the transaction on account of which the suit was instituted. But the malice which their utterance indicated was part of the transaction; it characterized the attack and impelled the blows; and the existence of that malice was one of the facts which the evidence was received to prove.

In the case of *Treat* v. *Barber*, 7 Conn., 279, Hosmer, Ch. J., says: "The jury are not bound down to give the mere pecuniary loss sustained by the plaintiff, but may award damages for the *malice* and insult attending the trespass." And Spencer, Ch. J., in *Lee* v. *Wolsey*, 19 Johns., 321, says: "The law in tenderness to human frailty distinguishes between an act done deliberately and an act proceeding from sudden heat."

And if the defendant in mitigation may show that the act proceeded from a sudden heat induced by the plaintiff's pro-

vocations, why may not the plaintiff in aggravation show that it proceeded from long cherished and premeditated malice ?

Again, the defendant himself claimed the benefit of this natural and very sensible distinction between "an act done deliberately, and an act proceeding from sudden heat," for he claimed, and very properly introduced evidence to prove, that his assault upon the plaintiff was occasioned by "sudden heat" produced by the plaintiff's false accusation. Evidence of the defendant's threats to commit the battery went directly to rebut that claim. We know of no rule of law or evidence which will preclude one party from repelling by evidence any claim which the other has a right to prove.

The fact that the threats proved never came to the plaintiff's knowledge before the assault is of no importance. The issue upon trial involved the consideration of the defendant's state of mind at the time of the assault. But his state of mind anterior to that time might be proved as a fact, because from that fact the jury would be authorized to infer what it was when the assault was made. The plaintiff's ignorance of that fact, and of the threats by which the existence of that fact was indicated, was therefore unimportant, because it could have no effect, either upon the reality of the existence of the fact itself, or upon the legitimacy or force of the inference which such fact authorized.

Secondly ; the plaintiff having proved the defendant's threats, the defendant offered evidence that just before the assault the plaintiff charged him (in substance) with a theft, and his answer to the charge. This evidence was properly received. Being "just prior" to the assault it was part of that transaction. The charge was a recent provocation, and as such proper to be proved by the defendant in mitigation of damages.

The plaintiff then offered to prove the truth of the charge thus made by him, but the defendant objected to the evidence, and it was properly excluded.

Then the defendant offered to prove his innocence of the charge, but the court, *mero motu*, rejected it, and as we think with entire propriety and correctness. The offer came with

an ill grace from the defendant, who had just procured the rejection of evidence to prove his guilt. And it was of no importance to the issue before the court whether the charge was true or false. The defendant's evidence that the charge was made, was admissible and was admitted only to show the provocation which he claimed, and to rebut the plaintiff's claim that he was actuated by premeditated malice rather than by sudden impulse and excitement. And besides, the charge was presumed to be false, and therefore it needed no refutation, as it had received no support from evidence.

The authorities cited by the defendant's counsel do not sustain the positions for which the counsel contend. Thus, Mr. Starkie, in his treatise on Evidence, Vol. 3, p. 1450, says: "The jury in an action of trespass are not restrained in their assessment of damages to the amount of the mere pecuniary loss sustained by the plaintiff, but may award damages in respect of the *malicious* conduct of the defendant." And we ask, how can the defendant's conduct be more directly and distinctly shown to be malicious, than by proving his prior declarations of an intention to commit the trespass charged against him? In *Avery* v. *Ray*, 1 Mass., 14, *Lee* v. *Wolsey*, 19 Johns., 319, and *Mathews* v. *Terry*, 10 Conn., 459, the decisions were, that the *defendant* had no right to give evidence of provocations occurring so long anterior to the assault that in the mean time the passion excited by such provocations had had time to cool. 1 Swift Dig., 641, is only to the same effect. This case presents a very different question.

It is true that in 2 Greenleaf on Evidence, sec. 270, it is said that "in actions of trespass *vi et armis* the secret intention of the defendant is wholly immaterial;" and again that "his secret intention whether good or evil can not vary the amount of injury to the plaintiff." But it is clear from the context that the learned author means no more than what he says in section 266, that "in cases of voluntary trespass the innocent intentions of the party can not avail to reduce the damages below the amount of the injury he has inflicted." Again, in the section last cited, the author says, "the plaintiff is not justly entitled to receive compensation beyond the

extent of his injury; nor ought the defendant to pay to the plaintiff more than the plaintiff is entitled to receive." But we do not understand him to mean that evidence of malice, premeditation, and vindictiveness, on the one hand, or of gross and immediate provocation on the other, should be excluded from the consideration of the jury. Indeed, in the same section it is conceded that evidence of all facts and circumstances which go in aggravation or mitigation of the *injury itself* is proper to be received, provided they belong to the act complained of.

Our own adjudications upon this subject are uniform and satisfactory. See *St. Peters' Church* v. *Beach*, 26 Conn., 355, and *Dibble* v. *Morris*, id., 416, and cases there cited.

It better accords with our natural feelings, as remarked by an anonymous writer whom Mr. Greenleaf quotes, (2 Greenl. Ev., § 266, note 2,) that the defendant should suffer more for an injury intentionally committed by him, than for one which was accidental; and our courts have uniformly, and as we think with entire propriety, done homage to these " natural feelings."

We think the motion for a new trial ought to be denied.

In this opinion the other judges concurred.