[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER
This lawsuit alleges the defendant doctors were negligent in failing to timely diagnose and treat the condition of a woman who later died. Her husband has brought the suit as administrator of her estate. Part of the claim for damages includes a claim that CT Page 1331-YY the defendants' negligence and its consequences led to her loss of the enjoyment of life. The husband also makes a claim for loss of consortium. The woman underwent inpatient psychiatric care at the Institute of Living in Hartford between June 1978 and May 1980. After her release she took psychotropic medication. The defendants have received medical records and/or reports regarding her psychiatric condition for a few years, since 1987, I believe, prior to the alleged acts of failure to diagnose and treat which occurred in 1990 and 1991.
The defendants want the records from the Institute of Living to be disclosed to them. Apparently in the past this had been agreed to along with a cost sharing agreement for their reproduction. The plaintiff now objects to the disclosure of these records or the use of the records because they "are irrelevant and further, they are being sought for the purpose of annoyance, embarrassment, oppression, or undue burden or expense." The plaintiff's major objection seems to be based on relevance or the lack thereof — the records from the Institute predate the allegations of the complaint by ten or more years. There is no claim of psychiatric privilege being made by the representative of the plaintiff or counsel.
The defendants argue that the records should be subject to disclosure since after her release from the Institute the woman continued to receive medication as a result of her psychiatric condition. Besides, the defendants claim to have learned that this lady told her health providers at the Institute in 1980 that she wanted to get a divorce.
The proper scope of the discovery rules is well known (P.B. § 218). The purpose of discovery is broader than the test of materiality for admissibility at trial since information is discoverable if it "appears reasonably calculated to lead to the discovery of admissible evidence." Sanderson v. Steve SnyderEnterprises Inc., 196 Conn. 134, 139 (1985); Conn. Practice,
Moller Horton, Commentary to P.B. § 218 at p. 391, Vol. 1.
There is no automatic or universally applicable cut-off date prior to which discovery would be irrelevant or unduly burdensome. How far discovery should go back — one year, three years, ten years — depends on the type of discovery sought and what information a discovery request seeks to procure. For example, if a claim is made for lower back injury in a motor vehicle accident case, claims of injury to the same site should CT Page 1331-ZZ probably be produced even if they were made a decade or more before. On the other hand, if an eighteen year old makes a claim for lost earning capacity due to an accident, it would be difficult to justify a discovery request seeking to learn how he or she earned his or her allowance by doing chores for mom and dad only three or four years before the suit was brought.
The first question to be asked is that of materiality.
Could these records lead to the discovery of admissible evidence? Certainly information relative to this woman's mental health and any prognosis regarding that matter would seem relevant to advance or rebut a claim for loss of the enjoyment of life. There is also a loss of consortium claim. In Dobbs Law ofRemedies, Vol. 2, Section 8.1(5), page 402, it says: "Negative personality changes in the injured spouse are also relevant to the non-injured spouse's satisfactions in the relationship. In the absence of have insisted that at least some damages be awarded." This woman's character and personality is clearly in issue on the loss of consortium claim.
The next question to be addressed is whether the age of the records sought negates the claim of materiality.
These records antedated the alleged tortious acts by at least ten years, however, states of mind are continuing. Psychiatric conditions and their effect on an individual's personality can be a continuing phenomena and psychotropic drugs can have varying effects on someone's personality and mental condition depending on the nature and severity of the initial condition which prompted inpatient treatment, the effect such drugs might have given that presenting condition, and ongoing stress factors in the person's life. It is difficult to see how a defense expert could make these determinations without having access to inpatient treatment records which in all likelihood contain an opinion that psychotropic medication on an outpatient basis at a certain point was a feasible treatment plan. Such records would very likely be necessary if a determination was to be made regarding the prognosis of this lady's future mental health. Were there any side effects to this medication? Could other medication have been substituted? Why was she released with a prescription for certain medication? I can't say all of these factors aren't relevant areas of inquiry. This doesn't mean psychiatric records going back twenty or thirty years should be open to discovery whenever a claim involving a plaintiff's mental state, emotions, CT Page 1331-AAA or personality are placed in issue. But, where someone has received inpatient psychiatric care and is released subject to ongoing treatment and/or medication upon release, it seems fair that access to her inpatient records is warranted to allow a full exploration of her mental state at the time of alleged loss and her prognosis.
As to communications regarding her feelings toward her husband and thus the viability of her marriage made in 1980, again, this involves state of mind. For example, threats made by a defendant to a victim in a homicide case are admissible to prove malice. The fact that some threats were made 4 years and 13 years before the actual homicide was held, only to go to the weight of such testimony not its admissibility. State v. Hoyt,45 Conn. 330, 336 (1978), 47 Conn. 518, 538 (1880), cf. Bartram v.Stone, 31 Conn. 159, 161 (1862). Certainly a trial judge can limit the admissibility of trial testimony as to state of mind if it is too remote. U.S. v. Hedgeworth, 873 F.2d 1313 (CA 9, 1989). But our cases and the federal rules of evidence do not establish any set time limits beyond which such evidence may not be introduced, see Rule 803(3), and it would be an improper limitation on discovery to set arbitrary time limits where the standards of materiality are more liberal than those at trial.
Embarrassment can't be an important factor. Personal embarrassment of the deceased is, of course, not a consideration, and if the husband and family would be embarrassed I'm sure the parties can agree on an appropriate protective order and I would be willing to order the records sealed.
The records don't appear to be so voluminous as to prevent practical delivery to the defendants and the parties' prior agreement as to sharing costs permits the court, I believe, to conclude that an expense imposed on the plaintiff under all the circumstances would not be "undue".
Under all the circumstances, I will deny the plaintiff's motion for a protective order.
Corradino, J. CT Page 1331-BBB