## PATRICK GAYNOR *vs.* OLD COLONY AND NEWPORT RAILWAY COMPANY.

In an action against a railroad corporation for an injury sustained by a passenger, who, in a dark night, upon the arrival of a train on the main track next to the station-house, alighted on a narrow platform between that track and a side track, and in crossing from the platform to the highway was struck by an engine backing on the side track, if the evidence at the trial has any tendency to show, according to the general knowledge and experience of men, that the situation, arrangement and use of the premises were such as to invite the plaintiff to cross to the highway in the manner in which he attempted to do so, that he used ordinary care in the attempt, and that the defendants did not provide proper safeguards against such an accident, the questions whether there was due care on the part of the plaintiff, and negligence on the part of the defendants, are for the jury.

TORT for personal injuries sustained by the plaintiff by being run over by the defendants' tender and locomotive engine, on the evening of December 1, 1865, upon a side track at the station in Fall River of the defendants' railroad, which ran from Boston through Fall River to Newport. At the trial, before *Foster*, J., a plan of the Fall River station was introduced in evidence, substantially as follows :

The plaintiff testified that he was mustered out of service as a soldier on July 28, 1865, and then went to Boston, returned to Fall River the next day, and resided in Fall River from that time until after the accident, on a street which connected with the section of Ferry Street which lay east of the defendants' station, which he passed twice daily on his way to and from his work; that during all that time he saw carriages conveying passengers to and from the station, driven to and from the open space north of the building marked " Car-house " on the plan, which building was used as the only passenger-house at the time when he went to Boston in July and until shortly before the time of the accident; that passengers coming from Water Street or the northern section of Ferry Street were accustomed to traverse the open space east of the old passenger-house, cross the side track, and enter the cars from the narrow platform between the tracks, without any obstruction, the fence marked by a dotted line on the plan not being erected until after the accident; and that up to the day of the accident he had no knowledge by observation that either carriages or passengers came to the new passenger-house.

There was other testimony, however, to the effect that the use of the old passenger-house was discontinued and the new passenger-house began to be used in September or October 1865 ; that the narrow platform between the two tracks was not built until within a month before the accident; and that while the old passenger-house was in use there was a broad platform in front of it, extending over the space which at the time of the accident was traversed by the side track and the narrow platform.

The plaintiff further testified that on the morning of December 1, 1865, he took passage on the defendants' cars from Fall River to Boston, together with nearly a hundred others who like him were going to Boston to be naturalized in the United States court; and that he entered the train from the platform adjoining the new passenger-house, and supposed that all the others did so also ; that they all returned from Boston in a train which reached Fall River about half past six o'clock in the evening, on the main track; that it was then very dark, " as

dark as a tunnel;" that he alighted from the train, with other passengers, upon the narrow platform, at a point about in front of the middle of the old passenger-house, and proposed to himself to cross the side track and go to the northern side of that house, to make water, and then to pass into Ferry Street and follow Ferry Street on his way home; that the narrow platform was about "knee high" and the first rail of the side track was about two feet from the base of it; that other persons were standing on the platform at the time, some of whom he saw there before he alighted from the car; that he made no halt, but stepped down at once from the platform, looking both up and down the track as he did so to see if anything was coming over it; that he knew that "there was nothing to come from Newport, because the next train to arrive was the steamboat train from Boston to Newport," but nevertheless, before he stepped on the track, looked in the direction of Newport and saw nothing approaching; that he saw no light from a lantern, or from any other source, nor any other indication of an approaching train, in either direction; that no one said that any car or engine was approaching, or warned him not to leave the platform; that he stepped forward, and was in the act of crossing the side track obliquely, but had not reached the middle of it, and one of his feet was still resting on the rail nearest to the platform, when he heard a voice halloo, and felt a hand grasp his shoulder, and at the same moment was struck and knocked down by the tender attached to and backed by the engine of the train by which he had come from Boston, which had been switched off upon the side track and was backing to an engine-house east of Ferry Street, and, with the tender, ran over and injured his leg.

There was other testimony in substance as follows : As to the lights; that before the new passenger-house was built there used to be an oil lamp "beside the old depot," but at the time of the accident no light was visible on or about the outside of any of the station buildings except what shone through the windows of the rooms in the new passenger-house, and this was intercepted from the plaintiff by the cars of the train in which he had arrived; and that there was no stationary lantern

in the vicinity of the buildings at that time, but a fortnight afterwards one such lantern was placed on the outside of the new passenger-house, and another at the corner of Eagle Street, and lights were provided also " on the west side " of the tracks. No allusion was made in any part of the testimony to any light upon the engine.

· As to the practice of backing down to the engine-house; that it was discontinued after the accident, but not for " some time " afterwards.

·As to the use of the narrow platform by passengers; that " passengers continued to come upon the narrow platform until the fence was built, and did so occasionally to the time of the trial, often crossing right before the engine; " and that it was " handy to get on that way while the engine was standing." One witness testified: " Time and again I've seen passengers on the narrow platform." " Several times I have seen passengers enter and leave the cars by the narrow platform, and if they did not choose to go to the end of it they stepped down upon the track and cut across." Another testified: " I often see passengers on the narrow platform and getting upon it by the side of it."

On the evidence of which the foregoing is the substance, the defendants contended that the plaintiff had not shown that he was in the exercise of due care, nor had shown that they were negligent; and the judge withdrew the case from the jury, and reserved it for the determination by the full court of the question whether that evidence (which he reported in detail) would sustain a verdict for the plaintiff; if so, the case to stand for trial; otherwise, judgment to be entered for the defendants.

*J. Brown*, for the plaintiff.

*E. H. Bennett*, (*J. C. Blaisdell* with him,) for the defendants.

COLT, J. It is for the plaintiff by affirmative evidence to establish, to the satisfaction of the jury, in cases of this description, his own freedom from negligence contributing to the injury of which he complains. Courts must take notice of that which is matter of common knowledge and experience, and when the plaintiff's case fails to disclose the exercise of ordinary care, as

judged of in the light of such knowledge and experience, he shows no right to a recovery. Ordinarily, however, it is to be settled as a question of fact, in each case as it arises, upon a consideration of all the circumstances disclosed, in connection with the ordinary conduct and motives of men, applying as the measure of ordinary care the rule that it must be such care as men of common prudence usually exercise in positions of like exposure and danger. When the circumstances under which the plaintiff acts are complicated, and the general knowledge and experience of men do not at once condemn his conduct as careless, it is plainly to be submitted to the jury. What is ordinary care in such cases, even though the facts are undisputed, is peculiarly a question of fact, to be determined by the jury under proper instructions. It is the judgment and experience of the jury, and not of the judge, which is to be appealed to. The refusal of the judge to withdraw the case from the jury cannot in any case be construed as an indication that in his opinion the jury ought to find in the plaintiff's favor upon this question. On the contrary, it is his duty to submit it to the jury, if there is any evidence to justify a finding, although in his opinion its preponderance should be against the plaintiff. *Fox* v. *Sackett,* 10 Allen, 535. *Warren* v. *Fitchburg Railroad Co.* 8 Allen, 227. *Meesel* v. *Lynn & Boston Railroad Co.* Ib. 234. *Reed* v. *Deerfield,* Ib. 523. *Gahagan* v. *Boston & Lowell Railroad Co.* 1 Allen, 187.

A majority of the court are of opinion that the question of the plaintiff's negligence in this case should have been submitted to the jury. There are elements disclosed which distinguish it from the simple case of a person crossing a railroad track without the permission of the corporation, and who may be regarded as a mere trespasser. The plaintiff was a passenger; the defendants had provided platforms for passengers to alight upon, on both sides of the track upon which the train in which he arrived stood; the plaintiff stepped from the car to the narrow platform which was constructed between the tracks and on the opposite side from the passenger-house. Two streets, Ferry and Eagle, crossed the tracks obliquely within a few rods of the north

side of the station buildings; and these streets crossed each other at right angles near the track. From the point at which the plaintiff started to cross, there was an open space extending along both streets for some distance; and embracing a tract of land north of a building which until within a few months had been used as a passenger-house; and across which access was formerly had by hacks and carriages to the old house. There was at the time no railing or fence which would hinder passengers coming from or going to that part of Ferry Street from crossing by a shorter route this open space and one track, whenever the train stood upon the track nearest the present passenger-house; there was nothing to separate this open space from the located limits of the highway; and, assuming the truth of the plaintiff's evidence, it was in fact used by passengers from that quarter, who crossed the open area and tracks to and from the narrow platform. The plaintiff gives a reason for desiring to go across to the north side of the old station-house. The night was very dark. Other passengers were standing upon the same platform, and were there when he stepped from the cars. He looked up and down the track, to see if anything was coming. There were no lights; no indications to him of an approaching engine. As he stepped upon the track, some one hallooed and laid his hand upon him, and at the same instant he was struck by an engine backing down upon him.

No one can be said to be in the exercise of due care who places himself upon a railroad track without the assurance from actual observation that there is no approaching train. But the degree of caution which he must exercise in crossing will be affected always by the circumstances of time and place. He has a right to rely to some extent upon proper precautions, and the usual signals of warning to be given by an engine or train passing a station where passengers are leaving another train upon its fresh arrival. So in passing a highway crossing, though bound to the exercise of due care, and not excused by the want of it in the other party, yet it is to be considered that certain signals are usually given by the train at those places, and these usual concomitants may to some extent be regarded in determining the degree of care.

It seems to us that there are other considerations in this case, touching the plaintiff's care, which are peculiarly proper to be regarded by the jury. It is claimed by the plaintiff that the arrangement, situation and use of the premises by passengers, was such as to afford an invitation or allurement, by implication, to him and others, to pass from the station across the track in the way attempted. And without doubt, if the situation and aspect of the place were such that, in connection with the actual use, the jury would be justified in regarding them as holding it out to the plaintiff as a suitable place for him on leaving the cars to cross, and he was thereby induced to attempt it, the measure of care required of him would be satisfied with far less vigilance and caution. On the other hand, the law requires no one to provide protection or safeguards for mere trespassers or wrongdoers, nor indeed for those who enter by mere permission without inducement held out by the owner. Such go at their own risk, and enjoy the license subject to its perils. Towards them there exists no unfulfilled obligation or duty on the part of the owner.

These suggestions are sufficient to justify the conclusion to which we arrive, that this point should have been submitted to the jury. We do not overlook the facts which already appear, from which it may be argued that the plaintiff was not in the exercise of due care; but it is not necessary that they be commented on here, and we express no opinion upon their weight. The jury will be required to give them due consideration when they settle the fact.

It is obvious that little light can be derived, upon the question of law here discussed, from previous decisions. What constitutes due care must depend upon the circumstances of each case. It cannot be defined as a matter of law. The case of *Bancroft* v. *Boston & Worcester Railroad Co.* 97 Mass. 275, relied on by the defendants, differs from this. In that case, the plaintiff's intestate stepped from a safe platform and attempted to cross the track unnecessarily and knowing that the train which he left must obstruct his view towards the point from which trains in that direction approached the station. And in *Penn-*

*sylvania Railroad Co.* v. *Zebe,* 33 Penn. 318, cited as like this, the platform for passengers occupied only the side towards the station, and the plaintiff, stepping out of the cars on the other side, stepped directly down upon the track; nor does it appear that there was any open space or highway crossing in the vicinity, as in the case at bar. *Willis* v. *Long Island Railroad Co.* 34 N. Y. 679. *Vinton* v. *Schwab,* 32 Verm. 614. *Elliott* v. *Pray* 10 Allen, 378. *Fordham* v. *London, Brighton & South Coast Railway Co.* Law Rep. 3 C. P. 368.

Upon the other branch of the case, the evidence tending to show negligence of the defendants should have been submitted to the jury. The plaintiff was a passenger, and while that relation existed the defendants were bound to exercise towards him the utmost care and diligence in providing against those injuries which can be avoided by human foresight. He was entitled to this protection, so long as he conformed to the reasonable regulations of the company, not only while in the cars, but while upon the premises of the defendants; and this requires of the defendants due regard for the safety of passengers, as well in the location, construction and arrangement of their station buildings, platforms and means of egress, as in their previous transportation. It is argued in this case that the platforms were not properly constructed, lighted or guarded, and that the defendants were guilty of negligence in backing down the engine without proper lights or signals. The bare statement of these matters shows that it is appropriately the province of the jury to settle them. *Warren* v. *Fitchburg Railroad Co.* 8 Allen, 227. *Bilbee* v. *London, Brighton & South Coast Railway Co.* 18 C. B. (N. S.) 584. *Johnson* v. *Hudson River Railroad Co.* 20 N. Y. 65.                    *Case to stand for trial.*