Kline & Tolles, for defendant.

---

(Superior Court of Cincinnati—General Term.)

THE PITTSBURG, CINCINNATI & ST. LOUIS RAILWAY COMPANY v. GEORGE W. MARTIN, Adm'r.

---

Railway companies held to the highest degree of care toward passengers.—When the relation commences it continues until the train has reached its destination, and the passenger has time to leave the premises by the usual route.—A passenger has a right to assume that the train has reached the station, and to leave the train when the name of the station is called and the train stops, unless he knows, or by the ordinary use of his senses can perceive otherwise, and that it is dangerous to leave the train.

(October 22, 1895.)

---

HUNT, J.

This is an action in which the defendant in error recovered a judgment against the plaintiff in error at Special Term for the sum of two thousand dollars ($2,000.00) for injuries alleged to have been sustained by

Andrew J. Maphet, through the carelessness and negligence of the plaintiff in error in the management and operation of its railway. It now comes into court on a proceeding in error to reverse the judgment of the court below.

The petition alleges substantially that the plaintiff in error is a corporation duly organized under the laws of the state of Pennsylvania, and on the 17th day of November, 1888, owned and operated a certain railroad known as the Little Miami Division, with the tracks, cars, locomotives and other appurtenances thereto belonging, and was a common carrier of passengers for hire between Pendleton station and Russell's station on the line of its railway in this county, that in consideration of the regular fare paid by Andrew Maphet, the plaintiff in error received him as a passenger on its road to be carried from Pendleton station to Russell's station; that when the train arrived at Russell's station which was after dark, the same was annouced by the brakeman of plaintiff in error. Maphet was thereby invited to alight from the train by plaintiff in error, which he did, in compliance with the invitation, at the usual place where passengers so alight at Russell's station from east bound trains, and started northwardly across the west bound track of the railway in order to reach the station of the defendant as was usual and necessary for passengers to do, when the defendant negligently caused one of its locomotives and train of cars to pass in a westwardly direction rapidly over the west bound track while passengers were alighting from the train on the east bound track on which Maphet was a passenger, and negligently running backward with the tender first, without having placed a headlight or any other light upon the same to warn the people of its approach, and negligently omitting to give any signal of the approach of the locomotive and train by bell or whistle or otherwise, by reason of which Maphet was unaware of its approach, although looking out for an approaching train; that by reason of the negligence as alleged, and without any fault or negligene of Maphet, the tender or locomotive of the defendant in error struck Maphet and hurled him some distance, knocking him insensible for almost an hour, and broke his right clavicle, or collar bone, in two places, and bruised and otherwise severely injured him, and thereby permanently disabled Maphet from using his arm, and permanently disabled Maphet from working at his trade as a carpenter.

The allegations as to the corporate capacity of the plaintiff in error, and the fact that Maphet was received as a passenger to ride from Pendleton station to Russell's station, are admitted by the answer of the defendant below, but there is a denial of each and every other allegation contained in the petition.

The jury returned a verdict for the defendant in error for the sum of $2,000, and judgment was entered on the verdict.

The petition in error states that there was error in the proceedings, verdict and judgment, in that—

First. The verdict was contrary to law.

Second. The verdict was not sustained by sufficient evidence.

Third. There were errors of law occurring upon the trial of the cause in the admission of testimony offered by the plaintiff, in the exclusion of testimony offered by the defendant, in the giving of certain special charges tendered by the plaintiff below, and in the rejection of certain special charges tendered by the defendant below, and in certain particulars of the general charge.

Fourth. There was misconduct upon the part of the prosecuting party in the abuse of privileges by his counsel in the closing argument to the jury. And,

Fifth. The court erred in overruling the defendant's motion for a new trial.

It is undoubtedly the law that a railway company, in so far as it relates to the running and management of its trains, is bound to exercise the highest degree of care to secure the safety of its passengers. Railroad v. Manson, 30 Ohio St., 451; Patterson's Railroad Accident Law, 204-296; Gaynor v. Old Colony & Newport Railway Company, 100 Mass., 208; Deering on Negligence, sec. 85.

It is a well settled principle, too, that the relation of carrier and passenger, when once begun, continues until the train has reached its destination and the passenger has time to leave the premises by the usual route. Gaynor v. Old Colony R. R., 100 Mass., 208; 2 Am. & Eng. Encyclopaedia 745, and cases cited; 2d Redfield on Railways (5 Ed.), 233; Railway Co. v. Krouse, 30 Ohio St., 222.

It may be further stated as a rule of law that when a railway train is approaching a station, and the name of the station is called by the brakeman, and the train then stops, a passenger has a right to assume that it has reached the station and to leave the train, unless he knows, or by the ordinary use of his senses, can perceive that it was not, and that it is dangerous to leave the train. Deering on Negligence, section 86; Central R. R. Co. v. Van Horn, 38 N J. L., 133-137; The Columbus & Indianapolis Central Railway Co. v. Farrell, 31 Ind., 408; Pennsylvania Railway Co. v. White, 88 Pa. St., 327.

It is admitted that Maphet was received as a passenger by the railway company to ride from Pendleton station to Russell's station, so that all the facts were fairly referable to the jury under the instructions of the court.

It is the contention of plaintiff in error that there was error in the general and special charges in that the court, in its instructions, assumed as a matter of fact that Maphet alighted at the proper time and place, and special stress is laid upon the fact that the court gave special charge number five (5) at the request of the defendant in error, and which, it is claimed, will permit of no other construction. The general charge, too, (p. 568), is complained of in that it states absolutely "that under the facts in this case the location and situation of the company's premises at the station all become important matters in the determination of the rights and duties of the respective parties to this controversy."

Perhaps it would have been as well had the general charges and special charge No. 5 stated hypothetically that if Maphet had so alighted it would be the duty of the defendant to allow him a reasonable time to leave the premises; but the court is of the opinion that the general and special charges, taken together, do not permit of the construction given by counsel for plaintiff in error that the jury was instructed unqualifiedly, and that the court asumed a state of facts to exist wholly within the province of the jury.

The court prefaced the general charge (p. 568), that the jury would be greatly assisted in applying to the facts such rules of law as would be given by the court if they would first determine, if they could, the situation of the two trains with respect to the station at the time the plaintiff left the east bound train.

The court, in the following paragraph, says: "If the east bound train was at the station, that is, at the regular and usual place of stopping for the discharge of the passengers, and having accepted the plaintiff as a passenegr, which is admitted, it is the duty of the railroad company to exert the highest degree of care in the management of all its

trains then at that point; or in other words, to provide for the safety of the passengers so far as reasonable human care and foresight can secure that result—that foresight and skill which prudent men are accustomed to use under similar circumstances. But the railroad company must not be looked upon as an insurer of the safety of passengers, nor as liable for injuries from any cause other than the negligence of the railway company.

"On the other hand, it was the duty of the plaintiff, while a passenger as aforesaid, in alighting from the train and passing away from it, to use ordinary care for his own safety—that care which a reasonable and prudent man would have exercised under similar circumstances." The court again uses this language:

"If it should appear to you that all that is complained of in this case happened at a point west of the regular station, and at a point near where it was not usual to discharge passengers, and while the east bound train had either slowed up or stopped before reaching the regular platform, and was in a position of a train awaiting its turn to approach the station after the passing of the west bound train, and the plaintiff voluntarily got off there, his right to be protected is not so great as that of a passenger at the regular station. The railway company can not be charged with liability to persons who violate the rules and regulations necessary in the running of trains, and the plaintiff has no right to assume that the company's employes would be on the lookout for passengers, or discharged passengers, at points remote from the usual place of getting on trains or going to or from the station landing place.

"If the plaintiff did in fact get off the east bound train without the invitation of the train men, and while it was west of the regular station, he did so at his own risk, and if he was injured, as is claimed, by the west bound train, he can not recover."        *        *        *        *        *        *        *

"However, if the brakeman of the east bound train called out the name of the station before the train had reached the regular station, while it was awaiting the departure of the west bound train, the plaintiff had a right to rely upon he invitation to alight, and if he alighted with the knowledge of the brakeman, it then became the duty of the defendant to afford him the same protection as at the station; but if the brakeman warned him then not to get off for there was danger, and he assumed the risk, he can not recover. And it must be remembered that, accepting such invitation to alight, the defendant company is not liable if the plaintiff could have observed that he was not at the regular station, and that there was imminent danger in accepting the invitation to alight" (p. 571).

Special charges Nos. 4, 6, 7, 9, requested by defendant in error and granted by the court, and special charges Nos. 3, 4, 5, 8, 13, requested by plaintiff in error and given, fairly leave the question of the place of alighting as one of fact to be determined by the jury, and the finding of which fact is first necessary to the determination of the question of negligence on the part of the railway company, and the degree of care to be exercised by Maphet himself.

That this question of the position of the train was fairly before the jury is emphasized by the fact that the jury, in answer to interrogatories found (1) that the west bound train, when Maphet's train came to a full stop at Russell's station for the discharge of passengers, was passing the station; and (2) that Maphet's train did check up, but did not come to a dead stop until it reached the station, for the purpose of allowing the west bound train to leave the station first.

Nor is there prejudicial error in the refusal of the court to give special charge No. 5 as requested by the defendant in error. The instruction was

to the effect that "if the jury find that a man of ordinary prudence in Maphet's situation would have looked out for approaching trains before crossing the west bound track, then the jury must find that Maphet, in this case, was guilty of contributory negligence, and render a verdict for defendant. For the testimony shows without conflict, that if Maphet had looked with reasonable care, he could have seen the train in time to have prevented the injury."

Negligence, it is claimed, under these circumstances, becomes an issue of law for the court to pass upon, and the case of The Cleveland, Columbus, Cincinnati & Indianapolis Railway Co. v. Elliott, 28 Ohio St., 340, 350, is cited in support of the proposition. It is not disputed that negligence may become an issue of law for the court to pass upon, but the question of contributory negligence in this case was properly left to the jury.

It is in evidence (Maphet, p. 156) that Maphet looked up toward the station and saw nothing. He heard the steam and whistling, but supposed it was the locomotive of his train. It was dark at the time. This evidence properly should go to the jury.

The jury was instructed that Maphet was bound to make such use of his senses for his own protection, as a prudent man would have done upon the same circumstances, if he alighted at the station, while the charge as to what circumstances would justify him in alighting before arriving at the station is so carefully qualified as to leave the impression that if Maphet did get off before the train finally stopped, he could not recover at all. Indeed, special charge No. 8, requested by the defendant in error, was given in exact words, and could not leave any doubt in the minds of the jury. It is as follows: "If you find that a man of ordinary prudence in Maphet's situation would have looked out for a train in crossing the west bound track, and that by so doing Maphet could have seen and avoided the danger, your verdict must be for the defendant, even though you should find that he alighted from the train, at the time and place of its stoppage, at the station for the discharge of passengers." Whether or not it may be negligence in leaving a train while in motion must depend upon the circumstances—especially upon the speed of the moving train. A train may sometimes move so slowly that one can step on or off it without danger, and it has been held in a number of cases that it is not necessarily negligent to get off or on a moving train (2 Am. and Eng. Encyc., 762), where many cases are collated. The court has considered the refusal of the court below to give special charges Nos. 10, 14, 17 and 19, as requested by plaintiff, and in veiw of the instructions of the court as comprehended in the general and special charges, do not find that there is error in the refusal prejudicial to the plaintiff in error.

The court, too, is of the opinion that the objection raised to the admission of evidence under the petition, and alluded to by counsel in oral argument, but not in the brief, is not tenable. A fair and reasonable construction of the pleadings would permit the evidence adduced on the trial. In other words, the negligence complained of consisted in permitting the two trains to be at the station at the same time, as the jury found, and the fault might be either, or both,—all of which is apparent from the pleadings, and therefore in issue. The court fairly stated the issues and it can hardly be said that they are not within the scope of the pleadings.

The rule as stated in Davis v. Guarnieri, 45 Ohio St., 470, declares that it is not necesary to allege in the petition in an action for negligently doing an act which resulted in an actionble injury, all the facts which contributed to the primary act complained of, or which tend to establish the negligence of such act.

It is urged that the plaintiff in error sustained a distinct prejudice

in reference to all of the real controverted issues in the case, in that the court below in the general charges and in special charges Nos. 2 and 7, given for defendant in error (pp. 577, 580), again submitted to the jury the issue as to whether the arrangement of the premises at the station required passengers on east bound trains to cross the adjacent track after alighting. It is true that the record discloses that there were certain formal admissions made by the defendant in error (p. 2), although in issue by the pleadings which were submitted to the jury. The admissions were only a part of the evidence, and a jury is presumed to understand a statement of fact as well as the court. It was perhaps unnecessary to again submit the formal admission of fact to the jury; but it can hardly be assumed that the jury could have been prejudiced by the language of the court on that point.

There is a reference on page 565 in the bill of exceptions to certain remarks made by the counsel for defendant in error in the closing argument, and which are assigned as grounds of reversal in this court. The remarks related to the protracted litigation, and that the defendant had not shown in any of the trials a disposition to submit fairly and fully to a jury the real issues upon their merits. It is contended, however, that the objection was waived, inasmuch as it was not made at the time. The voluntary remarks of counsel are not judicial utterances, and the ground upon which courts set aside verdicts influenced by the improper conduct of counsel, may be quite independent of any consideration as to the technical value of an exception. Without passing upon this question, any injurious effect the remarks of counsel might have had were neutralized by the first special charge, given at the request of the defendant in error, wherein the jury was told in effect, if not in exact terms, that the length of the litigation should have no bearing on the question of its merits, dor should either party be regarded with disfavor from that circumstance.

We are of the opinion that the propositions of law which, should govern, are in substance contained in the general and special charges of the court below, with proper qualifications and directions, applicable to the facts of the case, and that there is no error apparent on the record prejudicial to the rights of the defendant in error for which the judgment of the court in Special Term should be reversed.

SMITH and WILSON, JJ., concur.

Judge MOORE did not sit.

Robert Ramsey, for plaintiff in error.

H. D. Peck and Oliver B. Jones, contra.