## TEXAS & PACIFIC RAILWAY COMPANY v. HARVEY DICK.

Decided May 4, 1901.

**1.—Carrier and Passenger—Assault on Passenger by Third Party on Depot Grounds.**

A person traveling by train remains a passenger, after alighting from the train and while still on the depot grounds of the railroad company, until such a time as may be reasonably necessary to enable him to leave the premises, and during such time he is entitled to protection at the hands of the company's agents and servants against assaults by third persons.

**2.—Same—Fact Case.**

There being evidence to show that the railroad station agent knew that the assault would be made on the plaintiff, if he did not instigate it, and that he took no steps to prevent it, and made no attempt to interfere for plaintiff's protection after he knew the assault was being made, a judgment against the company was warranted.

Appeal from Parker. Tried below before Hon. J. W. Patterson.

*Bidwell & Stennis,* for appellant.

*H. W. Kuteman, J. C. Wilson,* and *A. B. Flanary,* for appellee.

HUNTER, Associate Justice.—This suit was brought by Harvey Dick against the appellant railroad company to recover damages for an assault and battery committed on the plaintiff on its station and depot grounds, while, as he alleges, the relation of passenger and carrier existed between him and the company. The defense was a general denial. The verdict and judgment in the District Court went against the company for $800, and it has appealed.

The evidence tended and was sufficient to establish that, on the 15th day of January, 1900, Harvey Dick, who was a merchant doing business at Millsap, Texas, bought a ticket from A. C. Grammer, the defendant's station agent at Millsap, Texas, to go to Weatherford, a distance of ten miles, and informed the agent that he would return on the night passenger train, which arrived at Millsap about 11 o'clock. He was a passenger on the returning night train, and upon alighting from this train at about 11:30 o'clock that night he walked along a graveled way about ten feet wide, which lay between the railroad track where the train was standing and the elevated plank platform surrounding the depot and station house, a distance of about sixty or seventy feet, when he reached the station house. In front of this Mr. Grammer, the agent, and the train porter were loading into the train some trunks, and partially obstructed the gravel walk, when he sat down his grip and assisted Mr. Grammer in putting on a large trunk. He then picked up his grip and continued his walk homeward. He walked along west on this gravel way about 120 feet to the west end of the elevated platform, where his path of exit crossed the appellant's tracks and right of way, and continued over a pair of steps which surmounted the north fence inclosing the depot grounds. Near the end of this platform one Barney Ellis, a brother of the agent's wife, overtook and passed him, and as he did so asked him if he was Harvey Dick, and upon his answering in the affirmative, Ellis struck him in the face with brass knuckles or some hard substance, knocking him down and rendering him unconscious, and in a most cowardly and brutal manner jumped on him and continued to beat his face until it was horribly and shamefully bruised and lacerated. Mr. Grammer was standing on this graveled way in plain view of the parties, the night being almost as bright as day, when one of the passengers remarked in his presence and hearing that the fight was going on. He did not attempt to interfere or go near them, but called out loudly, "Boys, stop that fighting!" and passed up the steps to the platform and into his office, but soon came out again, when the plaintiff, wounded and bleeding, in a semi-conscious condition, had reeled and clambered to the platform, where he was sustaining himself by holding on to the planks thereof, and was calling to the agent for help.

The agent went to him and carried him home and sent for a doctor, who dressed and sewed up his wounds, but for more than a month he was unable to do work of any consequence at his business. His physical suffering and his humiliation at being beaten in such a manner fully warranted the amount of the verdict. The evidence further established that the party who made this cowardly assault was not a citizen of Texas, but was visiting the agent's family, together with a cousin named Pink Ellis, from Missouri, and that they departed the State that night in some mysterious way for their native land, and have not been seen in Texas since, though much sought after. It further tended and was sufficient to establish that A. C. Grammer, the station agent, knew that the assault would likely be made that night, if he did not instigate it, and he took no steps whatever to prevent it, nor to interfere to protect the plaintiff after it was begun. He admits that his feelings were unkind towards Harvey Dick, and had been for some time. Harvey Dick and Barney Ellis did not know each other, had never spoken to each other, and there was no cause for ill feeling between them. The evidence established that Harvey Dick was still on the depot grounds and premises when the assault was made, though making his departure therefrom, and was consequently entitled to the protection due from a common carrier to its passengers.

The principal contention of the able counsel for appellant is that, at the time and place the assault was made, Harvey Dick was not a passenger, but had ceased to be such when he alighted from the train, and was therefore not entitled to the protection of the carrier's agents and servants from the assaults of third persons not agents or servants of the company. This point is raised in several ways, but sharply upon the charge of the court and in special charges asked by the defendant and refused by the court. The court's charge was as follows:

"If you believe from the evidence that the plaintiff had paid for transportation from Weatherford to Millsap over the road of defendant, and had taken passage on one of defendant's passenger trains from Weatherford to Millsap, then plaintiff was a passenger of the defendant while on said train and for a reasonable time after alighting therefrom and while on the premises of the defendant prepared for ingress and egress of its passengers, and by reasonable time as herein used is meant such time as is reasonably necessary to enable one to leave the grounds of the defendant after alighting from its train.

"If you find and believe that the plaintiff was a passenger of the defendant, and if you believe that while such passenger he was assaulted by some one with brass knuckles or other hard substance while upon the depot premises of the defendant at Millsap, Texas, and if you believe such assault was made *on the premises* of [meaning evidently 'in the presence of'] or with the knowledge of A. C. Grammer, and if you believe the said Grammer was the station agent of the defendant at said station of Millsap, and if you believe the said Grammer negligently

failed to protect or defend the plaintiff from such assault, and if you believe the said Grammer could by reasonable effort have prevented an assault, or protected the defendant [meaning evidently, plaintiff] therefrom, and if you believe that by said assault the plaintiff was hurt and damaged, you will find for the plaintiff.

"If you believe the relationship of carrier and passenger had ceased to exist between the plaintiff and the defendant when said assault was made, then you will find for the defendant, and in this connection you are charged that the relation of passenger ceased to exist after the defendant alighted from the train and after a reasonable time therefrom to enable him to depart from the premises of the defendant.

"A railroad company is not an insurer of the safety of its passengers, but is only required to use reasonable effort to protect such passengers, and you will not find for the plaintiff unless you believe the plaintiff was a passenger of the defendant, and unless you further believe the assault was made in the presence of, or with the knowledge of, the agent A. C. Grammer, and that A. C. Grammer negligently failed to interfere to prevent the assault or protect the plaintiff."

The charge is substantially correct, and those requested were not. In Railway v. Jones, 39 Southwestern Reporter, 124, we held that any one who enters the waiting room of a railroad station for the purpose of buying a ticket and becoming a passenger on the company's train is a passenger, and is entitled to protection from the company's agents and servants against insult and abuse from a third party committed in the presence of the station agent. In the case of Gaynor v Railway, 100 Massachusetts, 208, the plaintiff was a passenger on the train, but was injured after leaving the train and the platform upon which he had alighted, and while crossing a sidetrack in an effort to get to an old car house (for a necessary reason), from which he intended to proceed on an adjacent street to his home. The Supreme Court of Massachusetts held that when injured he was still a passenger; that he was entitled to protection as such not only while in the cars, but while upon the depot premises of the defendant.

In McKimble v. Railway, 139 Massachusetts, 542, the same learned court say (page 549): "There was evidence tending to show that the deceased left the train after it had stopped at a station where passengers were accustomed, and had the right, to take and leave the cars. If a passenger, he would continue to be such while rightfully leaving the train and station." For full list of authorities, see 4 Elliott on Railroads, secs. 1591, 1582.

In Railway v. Hinds, 53 Pennsylvania State, 512, a mob of drunken, rowdy men got aboard the train, not as passengers, for the conductor tried to prevent them from getting on and refused to take their fares. They got to fighting among themselves while the train was in motion, and the conductor was informed thereof, and his only answer was an exhortation to the passengers to throw them out. They broke the plaintiff's arm in their struggles with one another, and she sued the company

for damages and recovered. The judgment was reversed by the Supreme Court of Pennsylvania on other grounds, but Chief Justice Woodward, in delivering the opinion of the court on the proposition that, "the conductor did not do all he could and ought to have done to put a stop to the fighting upon the train, which resulted in the plaintiff's injury," said: "If the conductor did not do all he could to stop the fighting, there was negligence * * * Nor did his exhortation to the passengers to throw the fighters out come up to the demands of the hour. He should have led the way, and no doubt passengers and hands would have followed his lead. He should have stopped the train, and hewed a passage through the intrusive mass until he had expelled the rioters, or have demonstrated, by an earnest experiment, that the undertaking was impossible."

We have considered all the assignments of error carefully, and find no merit in them, and they are therefore all overruled and the judgment is affirmed.

*Affirmed.*

Writ of error refused.