# CHARLESTON.

LAYNE v. THE CHESAPEAKE & OHIO RAILWAY COMPANY.

Submitted January 25, 1910.   Decided November 22, 1910.

1. CARRIERS—*Carriage of Passengers—Termination of Relation.*
    The general rule is, that the relation of carrier and passenger does not terminate until the passenger has alighted from a railway train and left the place where passengers are discharged; or, after reaching his destination, has had reasonable time to get off the car and leave the premises of the carrier.

2. SAME—*Carriage of Passengers—Termination of Relation—Reasonable Time for Leaving Carrier's Premises—Question for Jury.*
    Another general rule is, that where a passenger is necessarily hindered or delayed in leaving the carrier's premises, the ques-

tion whether he failed to depart within a reasonable time is one of fact for the jury.

3.   SAME—*Carriage of Passengers—Termination of Relation.*

If, as in this case, a passenger on a railway train has alighted at his point of destination and is proceeding by the usual way to leave the railway company's premises, but, before actually doing so, is halted by the discharge of a gun and a report that his brother, a. fellow passenger, has been shot by a special police officer of the railway company, and in good faith and without the intention of engaging in the difficulty returns to relieve his brother he should be regarded as reasonably and necessarily delayed, and as continuing to be a passenger, entitled as such to the protection of the railway company and its agents, and if assaulted by such police officer or agent of the railway company the railway company is liable to him in damages for injuries sustained.

4.   SAME—*Carriage of Passengers—Termination of Relation—Questions of Fact.*

In such cases the good faith of a passenger, and the purpose of his return to the place of trouble, are questions of fact for jury determination from all the evidence in the case.

5.   SAME—*Carriage of Passengers—Action for Assault on Passengers—Admissibility of Evidence.*

The record of the indictment, conviction and sentence of a special police officer of a railway company, for the murder of the plaintiff's brother, is not admissible in evidence on the trial of an action against such railway company for injuries sustained by the assault or shooting of the plaintiff by such police officer, and the admission thereof, over the objection of defendant, is reversible error.

Error to Circuit Court, Kanawha County.

Action by Henry O. Layne against the Chesapeake & Ohio Railway Company. Judgment for plaintiff, and defendant brings error.        *Reversed, and New Trial Awarded.*

*Simms, Enslow, Fitzpatrick & Baker,* for plaintiff in error.

*A. M. Belcher* and *Charles Curry,* for defendant in error.

MILLER, JUDGE:

This is an action by Henry O. Layne against the railway company, to recover damages for injuries alleged to have been

sustained by him at the hands of one John L. Howery, a special police officer of defendant, in December, 1905.  It grows out of the same transactions involved in Layne's administrator against the defendant company, in which Robert Layne, a brother of plaintiff, was shot and mortally wounded.  That case, affirming the judgment below, was decided here November 23, 1909, and is reported in 66 W. Va. 607.

The verdict and judgment below in favor of the plaintiff in this case was for the sum of $5,000.00, to reverse which this writ of error is being prosecuted.

This case, involving as it does the same facts and circumstances involved in the case of Robert Layne calls for the application of the same legal rules and principles enunciated and applied in that case, unless there be good reasons for modifying or departing from them, and we perceive none, and none have been presented in the briefs and arguments of counsel.

The only material facts differentiating this from the former case, are that in the Robert Layne case he was shot and fatally wounded just after he had alighted from defendant's train, and had had time to go but a few steps.  He had not completed his journey, his destination being a station beyond Malden, plaintiff's destination.  In this case Henry O. Layne had alighted from the train, and, on demand of the train porter, had paid his fare, not previously demanded or called for by the conductor or other train officer, and, leaving his brother Robert in the act of demanding for him a cash receipt, for the cash fare paid, had gone some twelve to fifteen steps in the direction of the place of exit from the railway property, near the eastern end of the station house, but still on the station grounds or premises, when, on hearing the report of a pistol shot, and the announcement of some one in the crowd at the station, that Howery had shot Robert Layne, he laid down his bundles on the station platform, and went back a few steps in the direction of the pistol shot, found Howery in the act of raising up from over the prostrate body of his brother, who on seeing him leveled his gun at Layne and fired, the ball hitting plaintiff in the left side, inflicting a slight flesh wound.  Layne succeeded afterwards in wresting the gun from Howery's hand, and started away with it, pursued by Howery and two other train officers, one of whom fired one or two additional shots at Layne, but the

latter made a safe retreat across the public road, and through a store on the opposite side from the railway station.

It would be useless to again recite the facts common to both cases, or to go into a new consideration of the legal principles enunciated and applied in the former case, although able briefs have been filed, and elaborate oral arguments were made at the bar on the hearing. We will therefore confine ourselves to a consideration and disposition of those points or questions which counsel for the plaintiff in error regard as peculiar to this case, and as not having been involved in the former decision.

First, it is contended that plaintiff, at the time he was shot, and shot at, by Howery, and other servants of the railway company, had ceased to be a passenger, that by returning to the scene of the trouble between Howery and his brother Robert he ceased to be a passenger, and forfeited all right as passenger to protection by defendant and its agents. The general rule, alluded to in the opinion in the Robert Layne case, "is that the relation of carrier and passenger does not terminate until the passenger has alighted from the train and left the place 'where the passengers are discharged." Elliott on Railroads, section 1592. It only ceases, as a general rule, after a passenger has arrived at the place of his destination and has had reasonable time to get off the car or vehicle and to leave the premises of the carrier. 2 Sher. & Red. on Neg. (5th Ed.) section 490, pp. 884-5. And it continues, says this writer, for example, "while a passenger by a train is walking along the station platform, without unreasonable delay, though it be his intention to leave the platform at a point where he will become a trespasser." Reasonable time in such cases, means reasonable time under all the circumstances. *Chicago Ry. Co.* v. *Wood,* 104 Fed. 663. And "what is a reasonable time must often depend upon the circumstances of the particular case." 4 Elliott on R. R., section 1592. "And where the passenger is necessarily hindered or delayed in leaving the carrier's premises, the question whether he failed to depart within a reasonable time is one of fact for the jury." 2 Hutch. on Carriers, (3rd Ed.), section 1016. The case of *C. & O. Ry. Co.* v. *King,* 99 Fed. 251, is an illustration of the application of these general principles. The plaintiff was injured while crossing the railroad tracks intervening between the station house and the nearest public highway to the

town. The court held, that "if a passenger on a railroad train alights by direction of the company, or by its implied invitation, at a place where, in order to leave the premises of the company, it is necessary to cross intervening tracks, he remains a passenger until he has crossed such tracks, provided he uses the means of egress which the company has provided, or which is customarily used with its knowledge and consent." *Houston &c. R. Co.* v. *Batchler,* (Tex.) 83 S. W. 904, is another illustration of the same character. Batchler, the plaintiff, when he had arrived at the end of his journey, stopped on the platform of the station and talked for a short time with a friend before starting to leave the premises of the railway company. As he started to leave he was assaulted by the conductor of the train on which he had been a passenger, and the defense there, as here, was that the plaintiff was not a passenger at the time of the assault. The court, however, ruled that a passenger does not cease, *ipso facto,* to be such upon the arrival of the train at the point of his destination, but he has a reasonable time thereafter in which to alight from the train and leave the premises of the company. And the court held, in accordance with Hutchinson on Carriers, *supra,* that "what, under all the circumstances, is a reasonable time, is a question of fact, which must be determined by the jury." Other cases cited by counsel as illustrating the application of the general rule are: *Glenn* v. *Lake Erie &c. R. Co.,* 75 N. E. 282; *Gaynor* v. *Old Colony &c. Ry. Co.,* 100 Mass. 208, and *Texas & P. Ry. Co.* v. *Dick,* 63 S. W. 895. In the first of these cases, the court held that, "In case of an accident involving a passenger, who on alighting from the train intended and desired to depart from the place at once, but was hindered and delayed, the question as to what is a reasonable time should be determined from the attendant facts and circumstances given in explanation or excuse for such delay." In the Massachusetts case the plaintiff, a passenger on a train was injured after leaving the train and platform upon which he had been discharged, while crossing a side track in an effort to get to an old car for a necessary purpose, and from which he intended to proceed on an adjoining street to his home. The court held that when injured he was still a passenger and entitled to protection as such, not only while in the car, but while upon the premises of the railway company. The case of *Texas & P. Ry. Co.* v. *Dick*

68 W. Va.

is a closer case to the one we have here, perhaps, than either of the others. The plaintiff had arrived at destination. After passing along on a graveled way, about ten feet wide, between the standing train and the station platform, a distance of sixty or seventy feet, on reaching the station house the station agent and train porter were engaged in loading some trunks, which practically obstructed the walk. The plaintiff put down his baggage and assisted in loading the trunks, and then continued on his way homeward, and after going but a short distance, and while still on the railway premises, a brother-in-law of the agent assaulted and beat him in the presence and hearing of the agent, who did not interfere. The defense there, as here, was that the plaintiff has ceased to be a passenger, and that the defendant owed him no duty as such, but the supreme court of Texas held otherwise.

Applying these principles to the case here, had Henry O. Layne ceased to be a passenger when he was shot by Howery? It does not clearly appear whether or not, if he had continued his journey he could have gotten off defendant's premises within the time it took him to return to where Howery and his brother Robert were. But the fact remains, he was still on the defendant's premises, and had not loitered on the way. Can it be said, within the meaning of the authorities cited, that he was necessarily or reasonably delayed or hindered in his departure by the gun shot, and the report that Howery had shot his brother? We think that upon the highest principles of humanity, and ties of blood and brotherly affection, that if Henry O. Layne, on hearing these reports, was actuated by good motives and sincere intentions in laying down his bundles, and going back to the relief of his brother, reported to have been shot, he did not thereby lose his relationship of passenger, or his right as such to the protection of the defendant and its agents. If however, he returned, as one of defendant's instructions to the jury, given, assumes, to engage in a quarrel between Howery and Robert Layne, a question of fact for the jury, and not from motives of humanity and brotherly sympathy, as he claims, another fact for the jury, he was not necessarily or justifiably detained, and thereby severed the relationship of carrier and passenger, and lost his rights as such to the protection of the defendant or its servants.

Second:—Our conclusions on the first proposition condemns defendant's seventh instruction to the jury, refused, and as we think, properly refused by the court below. It is the only instruction differing materially from some of those passed upon in the Robert Layne case. As proposed it would have told the jury, assuming as true some of the facts peculiarly for jury determination, that under the evidence in the case plaintiff was not a passenger after he left defendant's train without the intention of returning to it, and if afterwards of his own accord, without being stopped by defendant's agents or servants, turned back after he had left the train, not for the purpose of becoming a passenger again, but for purposes of his own, he ceased to be entitled to the protection of defendant as passenger, and defendant was not liable for the assault committed on him after so turning back.

Third, did the court err, as contended by plaintiff in error, in admitting in evidence the record of the indictment, conviction and sentence of Howery for the murder of Robert Layne? We answer, yes. That record had not the slightest bearing on the issues in this case. It did not constitute rebuttal evidence as to any fact introduced in defense. The parties were not the same. Its only purpose and effect could have been to arouse the sympathy or prejudice of the jury, and was wholly improper and irrelevant for any purpose apparent, or pointed out by counsel. In *Rodgers* v. *Bailey,* a recent case, not yet officially reported, it is held, in accordance with approved practice, that "admission of irrelevant testimony, likely to enhance damages, is reversible error unless it plainly appears that the verdict is not in excess of the damages proved." "Nothing outside of the legitimate facts should be introduced to affect the minds of those who are to decide the case." *Sesler* v. *Coal Co.,* 51 W. Va. 318, point 4 of the syllabus. Even if this were a suit to recover damages for the same assault, which it is not, the record of the criminal proceeding would not be admissible. 3 Cyc. 1098. And, because of the want of mutuality, not even to establish, as *res adjudicata,* the fact on which the indictment was founded. *Honaker* v. *Howe,* 19 Grat. 50. 1 Greenleaf on Ev. (16th Ed.) section 537, referring in note to section 537, to sections 180, 189 and 523. The rule, many times repeated, is that where illegal evidence has been admitted, over the objection of a party,

it will be cause for setting aside the verdict, unless it clearly appears that the objecting party was not prejudiced thereby. See the cases digested in 1 Ency. Dig. Va. & W. Va. Reports, 592-3. The record in the criminal case was plainly inadmissable. We can not see, as we are urged to do by plaintiff's counsel, that the error was harmless, and that defendant was not prejudiced thereby. For the error in admitting this record the judgment below must be reversed, the verdict set aside, and the defendant awarded a new trial.

.This leaves the question of the alleged excessiveness of the verdict, also relied on by defendant. As the judgment and verdict must be set aside and a new trial awarded on another ground, it would be improper for us on this hearing, to express any opinion on that subject.

Judgment reversed, verdict set aside, and new trial awarded, the costs here to be adjudged in favor of the defendant, in the court below, to abide the result of the new trial awarded.

*Reversed and New Trial Awarded.*