MISSOURI, K. & T. RY. CO. OF TEXAS
v. COOK. (No. 7874.)

(Court of Civil Appeals of Texas. Ft. Worth.
Feb. 28, 1914. Rehearing Denied
April 4, 1914.)

1. CARRIERS (§ 321*)—INJURIES TO PASSEN-
GERS—INSTRUCTIONS—ASSUMING FACTS.

A charge, in an action for injuries caused by the failure of a railroad company to warn its

depot after the arrival of plaintiff by train, the first paragraph of which stated abstractly the duty of the company under Rev. St. 1911, art. 6591, to keep its station lighted and warm for not less than one hour after the departure of all passenger trains, and the second paragraph of which applied the law by instructing the jury that if they found that plaintiff was a passenger, etc., they should find for her, is not erroneous as assuming that the plaintiff was a passenger during the time of which she complained.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1247, 1326–1336, 1343; Dec. Dig. § 321.*]

2. CARRIERS (§ 247*)—CARRIAGE OF PASSENGERS—TERMINATION OF RELATIONSHIP.

By the common law, the relation of carrier and passenger does not terminate until after the passenger has alighted and has a reasonable time and opportunity to leave the depot, the question of what is a reasonable time and opportunity being one of fact, dependent on the circumstances of the particular case.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 984–993; Dec. Dig. § 247.*]

3. CARRIERS (§ 247*)—CARRIAGE OF PASSENGERS—TERMINATION OF RELATIONSHIP.

Rev. St. 1911, art. 6591, requiring railroads to keep their passenger depots open, lighted, and heated for one hour after the departure of passenger trains, fixes the reasonable time within which a passenger may remain in the station, without losing his right to protection as such, at not less than one hour.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 984–993; Dec. Dig. § 247.*]

4. CARRIERS (§ 333*)—CARRIAGE OF PASSENGERS—INJURY TO PASSENGERS—CONTRIBUTORY NEGLIGENCE.

One who remains in a railroad station for the full hour during which Rev. St. 1911, art. 6591, requires it to be warmed and lighted, after he has reasonable time and opportunity to leave, and thereby submits himself to danger or discomfort, cannot recover for the consequences because his own negligence contributed to the result.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1385, 1386, 1388–1397; Dec. Dig. § 333.*]

5. CARRIERS (§ 346*)—INJURIES TO PASSENGERS—ACTIONS—SUFFICIENCY OF EVIDENCE—CONTRIBUTORY NEGLIGENCE.

In an action for injuries caused by the failure of a railroad company to keep its depot lighted and warmed for one hour after the departure of a passenger train, as required by Rev. St. 1911, art. 6591, evidence *held* sufficient to warrant the jury in finding that the plaintiff was not negligent in remaining in the depot during the full hour.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1401; Dec. Dig. § 346.*]

6. CARRIERS (§ 321*)—INJURY TO PASSENGERS—INSTRUCTION—DUTY OF CARRIER.

In such an action a special charge that the railroad company owed the plaintiff no duty to take her to the hotel, or to provide her lodging from the time of the arrival of the train until the hour at which she left the depot, might have misled the jury, since the company did owe her a duty for at least a part of the time to keep the depot warm.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1247, 1326–1336, 1343; Dec. Dig. § 321.*]

7. DAMAGES (§ 132*)—EXCESSIVE DAMAGES—PERSONAL INJURIES—IMPAIRMENT OF HEALTH.

Where the evidence showed that plaintiff, a woman 54 years old, who prior to that time had been in good health and able to plow, hoe, and gather her crops to support herself and children, was seized with chills and fever as a result of sitting in a cold railroad depot after her arrival on one of defendant's trains, and that such symptoms had continued more or less ever since, resulting in an inability to work, and the question of the permanent injury was submitted to the jury without objection, a verdict for $2,875 will not be set aside as excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

Appeal from District Court, Clay County; P. A. Martin, Judge.

Action by Mrs. A. P. Cook against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for the plaintiff, and defendant appeals. Affirmed.

Garnett & Garnett, of Gainesville, for appellant. Taylor & Humphrey, and Wantland & Parrish, all of Henrietta, for appellee.

CONNER, C. J. This suit was instituted by Mrs. A. P. Cook to recover of appellant damages for alleged injuries sustained by her on the ground that appellant had failed to maintain lights and fire in its station at Henrietta for one hour after the departure of its 3 o'clock a. m. train November 7, 1912. Appellant answered: First, by a general denial; second, that appellee ceased to be a passenger upon reaching and safely alighting from the train at Henrietta, and hence that appellant owed her no further duty; third, that opportunity was afforded the appellee upon the occasion in question of leaving the depot by means of a cab which met said train, but that she did not avail herself of this opportunity, and made no effort to secure other accommodations for the balance of the night, and that her injuries, if any, were brought about by such failure on her part; and, fourth, that appellee's ill health, if any, was not the result of remaining in appellant's depot from 3 a. m. until 6:30 a. m., but was due to overwork, nervous breakdown, and conditions over which appellant had no control, and to which its action did not contribute. A trial before a jury upon the issues indicated resulted in a verdict and judgment in appellee's favor for the sum of $2,875.

[1] The first and second paragraphs of the court's charge are criticised as being on the weight of the evidence in assuming that appellee was a passenger during the time of which she complains, but these criticisms must be overruled we think. The first paragraph merely states in an abstract way the duty of the railway company, as declared by the article of the statutes hereinafter quoted, to keep its passenger station lighted, warmed, and open for all passengers entitled to go therein for a time not less than one hour before the arrival and after the departure of all trains carrying passengers. The second paragraph then proceeds to apply the law by instructing the jury that if they found that

appellee was a passenger, etc., they should find for the plaintiff, thus distinctly submitting to the jury in an affirmative form the issue of whether appellee was a passenger at the time in controversy, in view of which the merely possible inference that appellant has drawn from the charge was evidently without appreciable force. The further criticism of the charge that in the third paragraph the court assumes that plaintiff was injured must be answered in the same way. The charge as a whole clearly leaves the issue for the determination of the jury.

· The vital question on the issue of appellant's liability is raised by the fourth assignment complaining of the refusal of the following special charge: "Gentlemen of the jury, the evidence in this case shows that after the plaintiff reached Henrietta at 3 a. m., November 7, 1912, and disembarked from defendant's train that she ceased to be a passenger of defendant, and that it owed her no further duty. You will, therefore, return your verdict for defendant." The contention is that under the undisputed evidence the plaintiff at the time of her injury, if any, had ceased to be a passenger, and hence that as to her the defendant was not bound to furnish light or warmth.

Revised Statutes, 1911, article 6591, reads: "Every railroad company doing business in this state shall keep its depots or passenger houses in this state lighted and warmed, and open to the ingress and egress of all passengers who are entitled to go therein for a time not less than one hour before the arrival and after the departure of all trains carrying passengers on such railroad; and every such railroad company, for each failure or refusal to comply with the provisions of this article, shall forfeit and pay to the state of Texas the sum of fifty dollars, which may be sued for and recovered in the name of the state in any court of competent jurisdiction, and shall be liable to the party injured for all damages by reason of such failure."

[2] Even in the absence of a statute by the common law the relation of carrier and passenger does not terminate until after the passenger has alighted and had reasonable time and opportunity to leave the depot or alighting place, the question of what is reasonable time and opportunity being one of fact dependent on the circumstances of the particular case. See Tex. & Pac. Ry. Co. v. Dick, 63 S. W. 895; Ormond v. Hays, 60 Tex. 180; 4 Elliott on Railroads (2d Ed.) § 1592, and cases cited in notes.

[3] An analysis of the article of the statute quoted, however, indicates the legislative purpose to arbitrarily fix not less than one hour as the reasonable time within which a departing passenger may acquaint himself with his surroundings and deliberate upon ways and means for his further progress. The statute is imperative in form, and the right of the state in the exercise of its regulatory and police power to so prescribe is not

questioned. Indeed, appellant on the trial in effect so assumed by requesting the following special charge, which the court gave, viz.: "I charge you that defendant was required under the law to keep its depot warmed and lighted for one hour after the departure of its 3 a. m. train upon the occasion in question. Now, if you find from the evidence that a reasonable time within which plaintiff should have left defendant's depot did not exceed one hour after the departure of said train, then I charge you that you cannot allow plaintiff damage for any injury sustained by her, if any, by remaining in said depot for a longer time than one hour after the departure of defendant's train."

[4, 5] Of course the statute is not to be construed so as to impose a liability in favor of a departing passenger who remains in the depot for the full hour without cause or reason after he has had time and opportunity to leave. Should he do so, and thus voluntarily subject himself to danger, discomfort, or harmful conditions, he will be required to bear the burden of the consequences, on the familiar ground that his own negligence contributed to the result. So the question of whether, within the prescribed hour at least, appellant was liable for its failure to perform the duty of keeping its depot lighted and warm must depend upon the issue of appellee's own contributory negligence. This issue was fully submitted both in the court's charge and in special charge given at appellant's request, and we cannot say that the evidence is insufficient to support the jury's verdict thereon in appellee's favor. There is evidence tending to show that appellee was about 54 years old, frail in body, thinly clad, accompanied by a small grandchild, and nearly blind. There was other evidence to the further effect that she was unacquainted with the location of the town or hotels, some half a mile away; that there was no cab that met the train; that she lived and worked in rural communities and was timid and unresourceful, as the jury may have inferred from her appearance and manner of testifying. This evidence, we think, sufficiently sustains the jury's verdict that appellee was not guilty of negligence in remaining in appellant's depot for an hour at least after her arrival at Henrietta. Hence for that time appellant owed appellee the duty of keeping its depot open, lighted, and warm, and is liable under the statute for the proximate results of its failure to discharge such duty. In this connection we should perhaps state that we have not found it necessary to consider appellant's duty beyond the hour, inasmuch as the court submitted the case on the statute and the evidence tends to show that appellee's injuries were caused within less than an hour after her entry in the depot.

[6] We find nothing in the case requiring special charge No. 1, to the effect that appellant was under no duty to take appellee to a hotel or to provide her lodging from 3

to 6:30 a. m. when she departed. Indeed, the charge might have been misleading, for if appellee was without negligence, appellant did owe the duty of furnishing a warm depot for at least part of the time specified. Other special charges refused were, so far as proper, included in charges given.

[7] It is also insisted that the verdict and judgment is excessive, but as to this also we have concluded that it is our duty to rule against appellant. If appellee's evidence is to be credited, and the jury evidently did credit it, she was, prior to the occurrence in question, in good health and able to plow, hoe, and gather her crops, as had been her habit of life in supporting herself and children; that the night was cold, as was also the depot when she entered it; that it remained cold, and that within less than an hour after her entry she, as a result, was seized with a severe chill or "rigor," followed by fever; that such symptoms had continued more or less of the time since, causing suffering and an inability to labor, etc. The court even submitted the issue of permanent injury, and we find no specific complaint that the evidence did not warrant the submission. So that, on the whole, we feel, as stated, unable to say that the verdict and judgment is excessive. See Citizens' Ry. Co. v. Griffin, 49 Tex. Civ. App. 569, 109 S. W. 999, and cases therein cited.

Questions presented by assignments not noticed are sufficiently disposed of, we think, by what we have already said. It is, accordingly, ordered that all assignments of error are overruled, and the judgment affirmed.