Houston & Texas Central Railway Company v.
W. W. Batchler.

Decided March 25, 1903.

**1.—Carriers of Passengers—Assault by Conductor.**

One who has disembarked from a train and is going off the platform is still a passenger, entitled to protection against an assault by the carrier's own servants, and this irrespective of the object of his journey or his reason for stopping at that station.

**2.—Same—Passenger Provoking Assault—Mitigation of Damages.**

In an action of damages against a railway company for an assault by its conductor upon a passenger, the defendant may show in mitigation of the damages that the passenger provoked the assault by the use of grossly insulting language to the conductor without cause, where the assault was within such a short time after the provocation as to induce a presumption that it was committed under the immediate influence of the passion thus excited.

Appeal from the District Court of Ellis. Tried below before Hon. J. E. Dillard.

*Baker, Botts Baker & Lovett* and *Frost, Neblett & Blanding,* for appellant.

*G. C. Groce* and *S. P. Skinner,* for appellee.

FLY ASSOCIATE JUSTICE.—Appellee recovered a judgment against appellant for $5125, for damages received by him through an assault committed on him by a conductor in the employ of appellant.

It appears from the statement of facts that appellee was in Waxahachie and purchased a ticket over appellant's railroad to Ferris, where he resided. It seems that it was necessary to change cars at Garrett and take another train to Ferris, and finding that he would have to stay there for some time before the train arrived, he concluded to go to Ennis and wait there for the train. It was only three miles from Garrett to Ennis, and when the conductor, Grange Ashe, came for the fare, appellee, not having purchased a ticket to Ennis, tendered 10 cents in payment. The conductor demanded 25 cents, which appellee paid, but told the conductor that he would appropriate the money to his own use. The

conductor made out a receipt for the money and tenderel it to appellee, who refused it and reiterated the charge that appellant was a thief, and called him a "damned son of a bitch." This occurred a very short time before the train stopped at Ennis. At that place appellee got off, and while moving off the platform was struck by Ashe with a piece of iron, and a fight ensued.

The court charged the jury that the relation of carrier and passenger continues until the journey paid for is ended, and not only until the passenger has left the car, but until he has left the station, or until a reasonable time, to be determined by the circumstances, has been given him to leave the premises. Appellant admits that the charge embodies the law usually applicable to passengers, but contends that because appellee went to Ennis merely to pass the time until the next train going north should arrive, the moment he left the car at Ennis the relation of passenger and carrier ceased. There is no merit whatever in the contention. The relation of passenger and carrier can not be made dependent on the object that a passenger has in view in making a journey. Appellee had the right to go to Ennis or any other point for any purpose he deemed necessary for his convenience, comfort or pleasure, and he was entitled to the same rights, protection and privileges as though he had gone on affairs of state or the most momentous matters of business. It may have been necessary for appellee to stay at the station so as to be there when the other train came in, and if so, he was entitled to protection while so waiting. Railway Co. v. Dick, 63 S. W. Rep., 895.

In its answer appellant stated that appellee should not recover because he had willfully insulted the conductor and provoked the difficulty with him, and therefore the contention that the charge as to a verbal provocation not justifying an assault was not applicable to the pleadings and facts and can not be sustained.

The charge was as follows: "You are further instructed, that under the laws of this State, insulting words do not justify an assault; and though you may believe, should you so believe, that the plaintiff, while on defendant's train, used insulting words to the conductor in charge of said train, yet such words, if used, would not justify a subsequent assault by such conductor on plaintiff, but such subsequent assault, if committed, would be unlawful." This charge is the law, and no cause of complaint could have arisen in connection with it, had no special charges been asked by appellant. But in connection therewith appellant requested that the following instructions be given:

"You are instructed that though a railway company owes the duty of protection to all persons on its train as passengers, and to those lawfully and rightfully at its station houses and depot premises, yet a passenger also owes a corresponding duty of so demeaning himself as is not reasonably calculated to provoke a personal assault upon himself by any employe of the carrier; and if such person willfully insults an employe of such carrier in such manner as that an assault may be reasonably expected to ensue as a result, then such insult may be considered by

the jury on the trial of a suit by such person for damages, in mitigation of damages, if any damages are, or ought to be, recoverable on account of such assault.

"You are also instructed, that though insulting words will not justify an assault, yet, if you do believe from the evidence before you, under the instructions given you by the court, that at the time the assault was made by Ashe upon the plaintiff, Batchler, he, the plaintiff, was still a passenger of the railway company, and believe he is entitled to recover damages in this suit, and you do also believe that such assault was provoked or caused by any insulting epithets or words used by Batchler towards Ashe, then such insulting language may be considered by you in mitigation of the amount or measure of damages, if you should believe the plaintiff is entitled to recover any damages against the defendant."

It was established beyond question that the difficulty between the conductor and appellee was precipitated by the unprovoked and outrageous language of the latter towards the conductor while in the lawful discharge of the duties incumbent upon him, and the direct question is presented as to whether a railroad company can offer in mitigation of damages such conduct upon the part of the passenger.

There are two lines of decisions in the different States of the Union, on this question, the one holding that verbal provocation does not justify an assault, and does not mitigate actual damages, but may be shown in mitigation of exemplary damages, while the other holds that insulting language may be shown in mitigation of actual as well as exemplary damages. A short review of some of the cases will be instructive and cast light upon the position of the court.

Among those States holding that verbal provocation to an assault and battery may mitigate punitive, but not compensatory damages, are Maine, New Jersey, Wisconsin, and a few others. In the case of Osler v. Walton, 50 Atl. Rep., 590, the Supreme Court of New Jersey said that only one case, that of Robinson v. Rupert, 23 Pa., 523, sustains the position that verbal provocation will mitigate damages resulting from an assault, and all other adjudged cases examined by the court hold that while such provocation may mitigate punitive damages, it must not be allowed to reduce actual damages. It is said by that court that most of the decisions are collected in 4 Century Dig., p. 935, and a reference to that work discloses that a majority of the decisions are opposed to the doctrine of the New Jersey court.

In the case of Ward v. White, 9 S. E. Rep., 1021, speaking of verbal provocation, the Supreme Court of Virginia said: "They caused the assault—provoked it; were of a character to greatly excite and inflame the passions of the defendant; and, while the time extended itself through the period during which the whereabouts of the plaintiff was unknown, the subsequent meeting brought the whole matter vividly before the mind, and again ignited the passions of a man thus put under the ban of a newspaper insult, which was at the very time of the assault under the eyes of thousands of his fellow men, and which tended to-

wards his utter degradation. He was taunted with the matter on every hand, and so far from cooling, time—the lapse of time itself short, and enforced by the absence of the offender—had only more and more excited the outraged passions of the defendant, and caused him to do an act which it is unreasonable to suppose he would have committed without them. They were properly admitted in mitigation of damages, and were as essentially a part of the case as the assault itself."

In the case of Railway Co. v. Barger, 26 Law. Rep. Ann., 220, where a conductor of a railroad company had assaulted a passenger, the Court of Appeals of Maryland said: "Whilst the provocation of the plaintiff may not justify an assault, yet if it be of such character as would naturally arouse the anger and passions of men of ordinary temperaments, and if it is not too remote, it is admissible in mitigation of damages. The authorities differ somewhat as to whether evidence of recent provocation can be admitted in mitigation of compensatory damages. In Wisconsin it has been held that it can not be; whilst in New York, Kiff v. Youmans, 86 N. Y., 330, and in Pennsylvania, Robison v. Rupert, 23 Pa., 523, it has been decided that it may mitigate compensatory as well as punitive damages. It is said in Robison v. Rupert, supra, that when there is a reasonable excuse for the defendant, arising from the provocation or fault of the plaintiff, but not sufficient entirely to justify the act done, there can be no exemplary damages, and the circumstances of mitigation must be applied to the actual damages. If it were not so, the plaintiff would get full compensation for damages occasioned by himself."

In the New York case above cited, the court said: "It still remains that the plaintiff provoked the trespass, was himself guilty of the act which led to the disturbance of the public peace. Although this provocation fails to justify the defendant, it may be relied upon by him in mitigation even of compensatory damages. This doctrine is as old as the action of trespass (Avery v. Ray, 1 Mass., 11; Richardson v. Hine, 42 Conn., 206; Thomas v. Powell, 7 C. & P., 807; Lee v. Woolsey, 19 Johns., 319; Corning v. Corning, 6 N. Y., 103; Cushman v. Ryan, 1 Story, 100) ; and is correlative to the rule which permits circumstances of aggravation, such as time and place of an assault, or insulting words, or other circumstances of indignity and contumely to increase them."

In the case of Daniel v. Giles (Tenn.), 66 S. W. Rep., 1128, it was held: "The court properly charged the jury that no words or insults or opprobrious epithets would justify an assault. It is well settled, however, that any provocation calculated to heat the blood or arouse the passions of a reasonable man, if offered at the time of the assault, or so recently as to become a part of the res gestae, is admissible in evidence, and must be considered by the jury in mitigation of damages."

The courts of Massachusetts, Connecticut, Iowa, South Carolina, Alabama, Georgia and Louisiana are in accord with the courts from whose decisions the foregoing quotations have been made, and the English

courts have uniformly held that insulting words, which provoke an assault, should be considered in mitigation of damages, compensatory as well as exemplary. Tyson v. Booth, 100 Mass., 258; Bonino v. Caledonio, 144 Mass., 299; Bartram v. Stone, 31 Conn., 159; Thrall v. Knapp, 17 Iowa, 469; Keise v. Smith, 71 Ala., 481; Hayes v. Seas (S. C.), 29 S. E. Rep., 259; Cross v. Carter (Ga.), 28 S. E. Rep., 390.

The question has never been directly passed upon in the courts of Texas, and the way is clear for a choice between the doctrine advanced by Vermont, Maine, New Jersey, Wisconsin, Illinois and Michigan and that held by the States whose decisions have been above cited. It is argued by the courts holding that mitigation of damages can not be allowed for words of provocation, that if they may mitigate they may reduce the damages to a mere nominal sum, or even fully justify. We can readily conceive of cases of such outrageous provocation as should justify the reduction of damages for an assault to a nominal sum, and, were it not for the unbroken precedents, we should be inclined to go further and hold that it should preclude the assaulted party from recovery. An injured person is not permitted to recover damages when his negligence has contributed to the injury, no matter how negligent the party who inflicted the injury may have been, and when a man has, by his willful and inexcusable conduct, brought upon himself an assault, the jury should at least be permitted to consider such conduct in arriving at the amount of damages that should be awarded him. The criminal law recognizes human frailty under the influence of sudden passion arising from an adequate cause, and the punishment for assaults and batteries may be mitigated by proof of insulting words, and the crime of murder reduced to a lower degree of homicide, and we can see no reason why damages brought about by the misconduct of a person should not be mitigated by proof of such misconduct.

Railroads should be held to a strict accountability in the protection of passengers from the violence of their employes, and should be made to respond in damages for injury inflicted by such violence, but the passenger should not be licensed to trample upon the feelings and disregard the rights of the employes. It is true that the assault and battery in this case was a violation of the criminal statute, and can neither be wholly excused or justified, but in a civil action where the assaulted party is claiming damages for injuries to his person, he should not reap the full harvest of compensation for injuries which he forced by a violation of law in using words calculated to produce an assault. The use of the opprobrious epithets and abusive language upon the part of appellee was a violation of one of the penal laws of the State (article 599, Penal Code), and having by such crime caused an attack upon his person, the jury should be allowed to consider his conduct in fixing his damages. The justice of such a rule appealed with such force to the minds of the jury that they asked the court if they could not consider such conduct in arriving at their verdict.

The provocation that may be considered in mitigation of such damages should be so recent as to induce the presumption that the violence was committed under the immediate influence of the passion thus excited. The mitigating effect of the provoking words would be lost if there has been time for cool reflection. The jury should, in the light of circumstances, consider as to whether the assault was committed under the immediate influence of passion engendered by the insulting words, or was the outcome of cool deliberation.

The other errors assigned will not be considered, as they will not probably occur on another trial. For the reason that the court erred in refusing to charge the jury that insulting words provoking the assault might be considered in mitigation of the damages, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

ON MOTION FOR REHEARING.

It is contended by appellee that the opinion in this case is based entirely on assault cases between individuals, and that no case in which a carrier was a party has been cited and that none has been discovered by appellant. While the same principle would prevail as to corporations as applies to individuals in cases of this character, still this court not only cited a case of the application of the principle in which the conductor of a railway company had assaulted a passenger, but quoted extensively from it. Railway v. Barger (Md.), 26 Law. Rep. Ann., 220. Not only did the court in that case hold that verbal provocation might mitigate or completely destroy punitive damages, but that it might mitigate compensatory damages. The following charge asked by the appellant was commended: "That from all the evidence in the cause, the plaintiff is not entitled to recover exemplary damages, but such damages only as will compensate him for the injury done him, in estimating which the jury are at liberty to consider the offensive language of the plaintiff (if they should find he used such language) in mitigation of the damages." The court said: "We agree fully with the learned counsel for the appellant in his contention that if the jury believed the assault was provoked by the language used by the plaintiff, as testified to by the conductor, and others, they were authorized to take the provocation into consideration in mitigation of damages."

Appellee in his testimony admitted that he applied provoking epithets to the conductor, justifying himself on the ground that the conductor spoke abruptly to him. The language used by the conductor was, "You can pay or get off." This occurred during the first conversation. The conductor returned to appellee with a receipt for the money, and it was during this second conversation that appellee again charged the conductor with appropriating money belonging to the railroad company, and applied the other vile epithet to him. A female passenger on the train testified that when the conductor handed the receipt to appellee

the latter threw it into the former's face, and again told him he would appropriate the money. The baggagemaster accounted for the language of the conductor about appellee paying or getting off, by the fact that appellee seemed like he was not going to pay. He also testified that the receipt was thrown into the face of the conductor by appellee and the abusive language used in the first conversation repeated. We think the statement of facts justified this court in concluding that the language used by appellee was unprovoked. However, on another trial of this cause it will be the province of the jury to determine the character of the language used by appellee to the conductor, as well as to determine whether the assault was made under the immediate influence of sudden passion engendered by the provoking language, and to what extent it should mitigate the damages. The judgment in this case is reversed because the court refused to allow the jury to pass upon those facts in the trial of the case.

While appellee admits that he does not know whether the question of "cooling time" is one of law or fact, it is contended that under the facts of the case the assault was calmly and deliberately made, and the question should not have been submitted to the jury. Only a few minutes at furthest could have elapsed between the time the verbal provocation was given and the assault was committed, and men might differ as to the length of time it would take for a man to become calm and sedate after receiving such insults. It was peculiarly a question of fact to be decided upon by a jury. Sutherland, in discussing words of provocation for an assault says: "The mitigating effect of a provocation in words is spent when there has been time for reflection, and for the passion excited by it to cool. Other antecedent facts, however, may be proved in mitigation, where they are connected with the acts comlained of, and afford an explanation of the motives and conduct of the defendant, and show him less culpable than he would otherwise appear." Suth on Dam., sec. 151. A Maine case is cited by the author in which an affray in the afternoon was allowed in evidence in a suit brought for damages arising from an assault in the evening, as bearing upon the amount of the damages.

The motion for rehearing is overruled.

*Overruled.*