Houston & Texas Central Railway Company v. W. W. Batchler.

Decided November 5, 1904.

**1.—Carrier of Passengers—Protection of Passenger After Leaving Train.**

A passenger traveling by rail remains a passenger until the journey for which he has paid has ended, and until a reasonable time has elapsed within which he should have left the carrier's premises, such time to be determined from all the attendant circumstances; and this is true without regard to the object of the passenger's journey, or his reason for stopping at the station which is the end of his journey.

**2.—Same—Reasonable Time—Question for Jury.**

What is a reasonable time under all the circumstances of the case is a question of fact to be determined by the jury.

**3.—Same—Assault by Conductor—Provocation—Pleading.**

In an action against a railway company by a passenger for damages because of an assault on him by the train conductor the court's charge properly permitted the jury to inquire whether insulting words shown to have been used by plaintiff to the conductor, and which provoked the assault, were themselves provoked by previous insulting words of the conductor addressed to plaintiff, although such provocation had not been pleaded; and such charge was not on the weight of evidence.

**4.—Same—Mitigation of Damages.**

Insulting language by plaintiff to the conductor would not justify the assault, but could be considered in mitigation of damages in a suit by plaintiff against the railway company, unless such language was itself provoked by insulting words of the conductor.

**5.—Same—Assault After Time for Cool Reflection.**

The provocation by plaintiff must have been so recent as to induce the presumption that the assault by the conductor was committed under the immediate influence of the passion excited by it, and the mitigating effect of the provocation would be lost if there was time for cool reflection. Following ruling on former appeal, 32 Texas Civ. App., 14.

**6.—Same—Subsidence of Passion—Charge.**

A charge requiring the jury to find both that sufficient time had elapsed between the use of the insulting language by plaintiff and the time of the assault for cool reflection, and that the assault was the result of cool deliberation on the part of the conductor, before they could ignore the mitigating effect of plaintiff's insulting language, is held correct, and sufficient as against the contention that the true test is, whether the passion aroused by the insulting language had subsided, and not whether there had been sufficient time for its subsidence.

**7.—Same—Agreement for Mutual Combat.**

If plaintiff and the conductor agreed to have a mutual combat when the train should arrive at the next station, and the injuries to plaintiff were received in a mutual combat had as a result of such agreement, this would present a complete defense to the cause of action, and should have been pleaded by the defendant. Evidence held insufficient to raise the issue of a mutual combat.

**8.—Same—Future Loss and Suffering—Issue Raised.**

Testimony by plaintiff that his injured fist will never get well, and that the thumb and third finger of his right hand are stiff yet, held sufficient evidence to authorize a charge to the jury that they could take into consideration, in assessing the damages, any future loss or suffering of plaintiff which might be reasonably expected to result from the assault and injury.

**9.—Same—Assault—Duty of Other Servants to Interfere.**

Where other servants of the defendant company were present when the conductor assaulted plaintiff and could have protected him against the assault, it was their duty to do so, and their failure so to do rendered defendant liable in damages to plaintiff.

**10.—Charge—Repetition—Undue Prominence.**

Where one paragraph of the charge states the principles of law applicable to an issue in the case and a subsequent paragraph applies these principles to the facts of the case, this does not render the charge erroneous as giving undue prominence, by reason of the repetition, to the proposition involved in that issue.

**11.—Same—Requested Charge.**

It is not error to refuse a requested charge submitting matters sufficiently embraced in the main charge given.

Appeal from the District Court of Ellis. Tried below before Hon. J. E. Dillard.

*Baker, Botts, Parker & Garwood* and *Frost & Neblett,* for appellant. —1. The plaintiff having taken passage on defendant's train to be transported from Garrett, one of defendant's stations, to Ennis, another station of defendant, for the sole purpose of loitering and passing the time, some two or three hours, until the next train going north, on which he expected to again take passage to Garrett and thence to Ferris, as soon as he disembarked from the train at Ennis, the relation between him and the defendant of passenger and carrier ceased, and the

defendant having complied with its contract of safe carriage, it owed to him no further contractual duty.    2 Beach, Railway Law, 859; 2 Harris, Damages by Corporations, p. 675, secs. 589, 590; Com. v. Railway Co. (129 Mass.), 1 Am. & Eng. R. R. Cas., 457; 2 Am. and Eng. Ency. Law, 745; Rorer on Railroads, 488.

2. The "reasonable time" within which a person after alighting from the train at the station of his destination continues to be a passenger, and, as such, is entitled to protection against injury on the part of the carrier, is such time as is sufficient for him to depart from the carrier's station and premises, and not such time, as within which, regardless of the purpose of his going to, or his remaining at the station, he should have left the carrier's premises.    Railway Co. v. Finley, 79 Texas, 88; Railway Co. v. Miller, 79 Texas, 83.

3. If the insulting words used by Batchler to Ashe caused the assault by Ashe upon Batchler, then as between the defendant company and Batchler, the right to have such insults considered by the jury in mitigation of damages is not affected by the fact that Batchler's words of insult were provoked by insulting words or disrespectful treatment by Ashe to and toward Batchler.

4. The seventh paragraph of the general charge to the jury is reversible error, in that undue emphasis is thereby given to the proposition, that though the assault made by Ashe upon the plaintiff was because of insulting words used by the plaintiff to Ashe, such provocation could not be considered in mitigation of the damages resulting from such assault in the event the jury should determine that the insulting words used by plaintiff were provoked by previous insulting words or disrespectful treatment by Ashe to the plaintiff.    Krueger v. Railway Co., 69 S. W. Rep., 810.

5. Batchler, having no business which required him to remain at the depot after the termination of his journey, and his purpose in going to Ennis being merely to pass away the time of another train's delay, if he did loiter or remain on the depot premises for a longer time than was reasonably necessary for him to depart therefrom, the relation of passenger and carrier between him and defendant had ceased, and no liability existed against the defendant in his action on account of the alleged assault made upon him.    Davis v. Railway Co., 59 S. W. Rep., 846.

6. The court erred in the fourth paragraph of the general charge to the jury, viz.: "If a servant of a carrier of passengers unlawfully assaults a passenger of such carrier, even under the immediate influence of passion excited by insulting words of such passenger to him, it is the duty of the carrier through other servants, if others are present, promptly to protect such passengers from such assault, and put an end to it, and if the carrier fails so to protect the passenger it fails in its duty, and is liable in damages to such passenger." This charge is reversible error, because that, in effect, it makes the defendant an insured of plaintiff's safety, by the intervention of its other servants who might be present when the assault was made upon him by the conductor.

7. The evidence adduced on the trial tending to show, that on the train, just before its arrival at the depot, the plaintiff used toward the

conductor grossly insulting epithets, which the conductor resented, and thereupon, the plaintiff and conductor mutually agreed to settle the matter after the train should arrive at Ennis, and that a physical conflict did take place between the parties after the train arrived at the station, it was reversible error to refuse defendant's special charge No. 4, which was applicable to the very facts in evidence and would have been an instruction to the jury as to the proper rule of law affecting the defendant's liability. Railway Co. v. Hopkins, 108 Ga. 324; Peavy v. Railway Co., 81 Ga., 485.

*S. P. Skinner* and *G. C. Groce,* for appellee.—1.   A carrier owes to its passengers protection against wrongful assaults by its servants, and one who pays his fare on a railway train to a point of destination thereon becomes a passenger, and remains such after alighting from the train, while on the depot premises of the carrier, until a reasonable time, under the circumstances, within which to leave the premises has elapsed. Houston & T. C. R. R. Co. v. Batchler, 32 Texas Civ. App., 14, 73 S. W. Rep., 981; Texas & P. Ry. Co. v. Dick, 63 S. W. Rep., 895; Galveston, H. & S. A. Ry. Co. v. LaPrelle, 65 S. W. Rep., 488; International & G. N. Ry. Co. v. Giesen, 69 S. W. Rep., 653; Dillingham v. Russell, 73 Texas, 47; Texas & P. Ry. Co. v. Jones, 39 S. W. Rep., 124; St. Louis, & S. W. Ry. Co. v. Franklin, 44 S. W. Rep., 701; Chicago & E. Ry. Co. v. Flexman, 103 Ill., 546; Crocker v. Railway Co., 36 Wil., 657; Hover v. Railroad Co., 43 L. R. A., 84; R. & D. Ry. Co. v. Jefferson, 32 Am. St. Rep., 87; White v. Railway Co., 44 Am. St. Rep., 489; Norfolk Ry. Co. v. Anderson, 44 Am. St. Rep., 884; New Jersey S. B. Co. v. Brackett, 121 U. S., 638; 4 Elliott on Railroads, 1638.

2. Appellee went from Garrett to Ennis for the sole purpose of waiting for a delayed train which he had expected to meet and board at Garrett, and had he remained at the Ennis depot until that train arrived, he would have continued to be a passenger during such interval. Houston & T. C. R. R. Co. v. Batchler, 73 S. W. Rep., 981; St. Louis & S. W. Ry. Co. v. Franklin, 44 S. W. Rep., 701; Texas & P. Ry. Co. v. Jones, 39 S. W. Rep., 124.

3. If the conductor failed in his duty of polite treatment toward appellee, and instead thereof by his insolent and insulting words to appellee caused appellee to use insulting words to him, which he subsequently resented by violently assaulting appellee, while still a passenger of his principal, neither he nor his principal is entitled to have the resulting damages mitigated by such insulting words of appellee. Baltimore & O. Ry. Co. v. Barger, 26 L. R. A., 220, and authorities supra.

4. To the claim that insults to or disrespectful treatment towards appellee by the conductor were not pleaded, we reply that matters of mere exaggeration or mitigation need not be pleaded, and this matter related purely to the matter of mitigation that was urged, and was properly considered in rebuttal thereof.   McGehee v. Shafter, 9 Texas, 20; Railway Co. v. Godair, 22 S. W. Rep., 778; 1 Sutherland, Dam., sec. 422.

5. Where only compensatory damages are sought for injuries result-

ing from an assault, insulting words, used by the party assaulted to the assailant, which provoked such assault, can not be considered in mitigation, and the holding to the contrary on the former appeal was erroneous. M. V. Ry. Co. v. DePascale, 71 N. E. Rep., 633; Baltimore & O. Ry. Co. v. Barger, 26 L. R. A., 220; 45 Am. St. R., 319; Osler v. Walton, 67 N. J. Law, 63; Wilson v. Young, 31 Wis., 547; Mangold v. Oft, 63 Neb., 397; 88 N. W. Rep., 507; Johnson v. McKee, 27 Mich., 471; Donnally v. Harris, 41 Ill., 126.

6. Where the assault was committed by the conductor upon a passenger a considerable interval after the latter had used insulting words to him, the question of cooling time was one of fact for the jury. Railway v. Batchler, 32 Texas Civ. App., 14.

7. A mutual combat is where two parties mutually and willingly enter into a fight, in pursuance of an agreement previously made, to fight at such time and place. Ashe slipped up on Batchler, and before the latter was aware struck him over the head with a deadly weapon. Red v. State, 46 S. W. Rep., 408; Waldon v. State, 34 Texas Cr. App., 92; King v. State, 4 Texas App., 54.

BOOKHOUT, Associate Justice.—W. W. Batchler filed this suit against the Houston & Texas Central Railroad Company on the 8th day of May, 1901, seeking to recover damages for personal injuries alleged to have been suffered by him on account of an assault made upon him by a conductor of defendant at defendant's depot at Ennis, on April 1, 1901. A trial resulted in a verdict and judgment for plaintiff, and. defendant appealed.

*Conclusions of Fact.*—On the 1st of April, 1901, the plaintiff, Batchler, purchased a ticket from Waxahachie to Ferris, via Garrett, and entered, as a passenger, defendant's train. On the arrival of the train at Garrett, Batchler, finding that he would have to remain at Garrett two or three hours before he could catch the northbound train on the main line for Ferris, which train was late, concluded to remain on the train and go on to Ennis, a place of five or six thousand population, three miles south from Garrett, and stay there until the northbound train should come along, and board that train for home, Ferris. After the train left Garrett the conductor came through the coach in which Batchler was seated, taking up tickets and collecting fares. As to what took place thereafter is best told by Batchler, who testified as follows: "I came to Waxahachie on the morning of that day. I was living at Ferris, about seventeen miles northeast from Waxahachie, and about sixteen miles from Ennis on the Houston & Texas Central Railroad. In starting from Waxahachie I bought a ticket from Waxahachie to Ferris. Go to Garrett and change cars, take the Central road to Ferris, is the way the ticket would go. I did not care to wait over at Garrett, and I remained on the train to go to Ennis, where I thought I would stay until the northbound Central came along, and board that train for home, Ferris. It is said to be three miles from Garrett to Ennis. I did not buy a ticket from Garrett to Ennis. When the conductor came through I offered him a dime, knowing that to be the fare from

Garrett to Ennis. When I offered him a dime he very abruptly said, 'That is not my way of doing business.' I said, 'I will buy you a ticket when I get to Ennis; I have done that before.' He said, 'That is not my way of doing business; give me 25 cents if you want to ride with me.' I put up my dime and was getting the 25 cents, and I remarked to him, 'You are a little extravagant, ain't you? You couldn't collect 25 cents by law.' He said, 'Give me 25 cents or you will get off the train.' I handed him the 25 cents and remarked, 'I guess you want to knock this down.' He remarked, 'That is my business,' and passed on. It wasn't a great while until he came back and offered me a piece of paper. I knew the law was to collect 4 cents per mile, and I thought that was all he could collect, and I knew he was collecting more than he ought to according to the way I understood it. When he brought me the receipt, such as conductors give for cash fare, I said, I don't want that,' and he gave it a flip and walked off.

"After a little bit he came back again and placed his right hand on the back of the seat I was sitting on and his left hand on the back of the seat in front of me, and remarked: 'You never have traveled much, have you?' And I said, 'No; I have been up to Waxahachie.' I said, 'When did you get loose?' and he said, 'I have been loose ever since the company gave me this train.' I said, 'Is this train yours, or are you running it for someone else?' He said, 'For the company and for the good people generally; and if I was as big a thief as you, I would knock down a great deal.' I said, 'You son of a bitch, I am no thief.' He said, 'What did you say?' I began to get up. I said, 'You son of a bitch, I am no thief.' He invited me in the other car. When we got into the other car I said, 'You have invited me into this coach and I have come.' I said nothing more, and sat down. Nothing more was said until after I had gotten to Ennis, gone out of the smoking car, and was talking to a friend, who was joking me about having to pay 25 cents; he thought it was a good joke on me, for it cost me 25 cents and hadn't cost him anything. I was watching the conductor all this time. He went up on his coach pretty soon, went to his box, raised the lid, and I supposed he wasn't going to raise any fuss with me, and I said to the man I was with, 'Let's go down town.' I had turned around, facing town, when Ashe touched me on the arm and said, 'You called me a son of a bitch,' and I knew it was him; and as I started to turn around he struck me on the head with an iron rod and knocked my hat off, and came pretty near knocking me down. I turned and tried to catch the rod; he hit me again on the head, splitting the skin about three inches; it bled very profusely and blood ran down over my face and clotted up my eyes; he hit me the third lick on the head; the fourth lick he hit me on the arm, enough to turn it blue; came very near breaking my arm. That lick knocked the rod out of his hand and it fell to the floor, and we had a fight. I pushed him back and we fought back nearly up to the depot. When we got up there I was pretty weak; I had lost so much blood, and those licks on my head. He had me with both arms, and I had him pretty much the same way. I braced myself and kicked him. I felt his muscles give way and I thought I had him where I could handle him, and a fellow reached round and held me and the

conductor, too. That ended the fight. I couldn't tell how long we fought; I knew it was a good long time. We fought from the train up to the depot."

In deference to the verdict we find the facts as testified to by Batchler. We find that at the time of the assault upon appellee he sustained the relation of passenger to appellant, and that appellant owed him the duty of a carrier, and that by the assault appellee received serious injuries which to some extent are permanent, and that he suffered damages in the amount found by the jury. We find there was no agreement between conductor Ashe and appellee to have a mutual combat after the train arrived at Ennis.

*Conclusions of Law.*—1. The first assignment of error complains of the first paragraph of the court's charge, which reads: "Railway companies in the transportation of persons in their cars from point to point on their lines for hire are common carriers of passengers, and when a person on a coach of such railway company pays his fare to a point of destination on the line of such company, he becomes a passenger of such carrier and remains such until the journey for which he has paid has ended, and until a reasonable time, to be determined from all the attendant circumstances, within which he should have left the carrier's premises, had elapsed; and this is true without regard to the object of the passenger's journey, or his reason for stopping at the station which is the end of the journey."

The following are substantially the objections urged to this charge: (1) That as appellee went to Ennis for the sole purpose of passing the time until the delayed northbound train arrived, the very instant he alighted from the train the relation of carrier and passenger ceased. (2) That the reasonable time within which a passenger ought to leave the depot premises after alighting is such time as is sufficient for him to get away, and no more. (3) That the object and purpose of a passenger's journey should be considered in determining how much time should be allowed him, after alighting from the train at the end of his journey, to leave the depot premises.

The charge correctly defines the duties of a carrier to a passenger and the time during which this relation continued, as well as the time when it ceases. The passenger does not cease, ipso facto, to be such upon the arrival of the train at the point of the passenger's destination, but he has a reasonable time thereafter in which to alight from the train and leave the premises of the company. Houston & T. C. Ry. Co. v. Batchler, 32 Texas Civ. App., 14, 73 S. W. Rep., 981; Texas & P. Ry. Co. v. Dick, 26 Texas Civ. App., 256, 63 S. W. Rep., 895; Galveston, H. & S. A. Ry. Co. v. La Prelle, 27 Texas Civ. App., 496; 65 S. W. Rep., 488; Dillingham v. Russell, 73 Texas, 47; St. Louis & S. W. Ry. Co. v. Franklin, 44 S. W. Rep., 701; Hover v. Central R. R. Co., 43 Law Rep. Ann., 84. What, under all the circumstances, is a reasonable time, is a question of fact which must be determined by the jury. The charge complained of announced a general principle, and later on the court, in applying the law to the facts, gave the following charge: "If you believe from the evidence in this case that plaintiff,

W. W. Batchler, on or about April 1, 1901, was on a train on defendant's line of road, and paid his fare for transportation from one point on said road to another, to wit, from Garrett to Ennis, and that after the arrival of said train in Ennis, and before a reasonable time, to be determined from all the evidence, had elapsed in which plaintiff should have left the station premises, the conductor of the train by which plaintiff came to Ennis on defendant's station premises, made a violent and unlawful assault on plaintiff, inflicting personal injuries upon him, then it would be your duty to find for plaintiff damages against defendant, to be measured as will hereinafter be indicated."

The jury were further instructed in the eighth paragraph that if the relation of carrier and passenger had ceased to exist, they would find for appellant. These charges fairly presented the issue as to whether the relation of passenger and carrier between appellee and appellant had terminated at the time of the assault. Construing the charge as a whole, we are of the opinion that it is not subject to the objections urged in the first assignment of error.

2. Complaint is made of the third paragraph of the court's charge, which reads: "A passenger owes to the servants of his carrier a duty of proper conduct, and if he insults a servant of his carrier while in the proper and lawful discharge of his duties in such manner as that an assault by such servant may reasonably be expected to follow, and the servant insulted, under the immediate influence of passion excited by such insults, assaults the passenger, such insults may be considered, not in justification of such assault, but in mitigation of damages which may be awarded for such assault; the provocation, however, which may be considered in mitigation of damages should be so recent as to induce the belief that the violence complained of was committed under the immediate influence of the passion thus excited. The mitigating effects of insulting words would be lost if there had been time for cool reflection; and if the insulting words by the passenger which caused the assault were themselves provoked by insulting words or disrespectful treatment to him from the servant committing the assault, then the principle of mitigation does not apply."

It is contended that this charge is erroneous in that (1) it permits the jury to inquire whether the insulting words by appellee to the conductor were themselves provoked by previous insulting words or conduct of the conductor to appellee; (2) there was no pleading to justify such a charge; (3) that portion of this paragraph is a charge on the weight of evidence; and (4) there is no issue in the evidence as to whether "the violence complained of was committed under the immediate influence of the passion excited by the insult offered the conductor by the plaintiff."

The evidence as to what was said by conductor Ashe and appellee in the several conversations preceding the assault is somewhat conflicting. The jury evidently accepted the version of appellee and the witnesses who agreed with him. This version is to the effect that Batchler tendered the conductor 10 cents in payment of fare from Garrett to Ennis, thinking this the correct amount. When this was refused he offered to buy a ticket when he reached Ennis, which he had often done before.

Conductor Ashe thereupon demanded 25 cents, saying he would put Batchler off if that amount was not paid. After receiving this amount the conductor went away and returned with a receipt, which appellee refused to accept. Thereupon the conductor again walked away, but shortly returned and began the conversation in which he called appellee a thief. Thereupon appellee retorted by calling the conductor an insulting epithet and denying he was a thief. Thus, it would seem that the insulting words used by appellee were provoked and induced by insulting language on the part of the conductor. This being true, the charge announced a correct principle. If the insulting language used by the appellee was provoked by the insulting words of the conductor, then it ought not to be considered in mitigation of damages in a suit by appellee against the company. Nor was the appellee required to plead the insulting language on the part of the conductor towards him, to have this issue submitted to the jury. Matters which go merely in aggravation or extenuation, and whose effect is but to enhance or diminish the damages, need not be pleaded. McGehee v. Shafter, 9 Texas 20; Gulf, C. & S. F. Ry. Co. v. Godair, 22 S. W. Rep., 778; 1 Suth. on Dam., sec. 422.

It was in effect held on the former appeal of this case, by the Court of Civil Appeals for the Fourth District, that before the insulting words used by appellee towards the conductor could be considered in mitigation of damages the provocation must be so recent as to induce the presumption that the violence was committed under the immediate influence of the passion thus excited, and that the mitigating effects of the provoking words would be lost if there had been time for cool reflection. 32 Texas Civ. App., 14, 73 S. W. Rep., 934. The charge was in accordance with this holding, and is not on the weight of evidence.

3. It is contended that the court erred in the seventh paragraph of its charge, which is as follows: "If you find that the defendant's servant, the conductor, assaulted the plaintiff while he was a passenger of the defendant, as the relation of carrier and passenger has been above explained, but that such assault was because of insulting words previously used by the plaintiff to the conductor, then you should consider, in the light of all the circumstances in evidence, whether the insulting words by plaintiff to such conductor were or not themselves provoked by previous insulting words or disrespectful treatment by said conductor to plaintiff, and also whether the assault was committed under the immediate influence of passion engendered by the insulting words which caused it, or was the outcome of cool deliberation, and should you find that without provocation plaintiff applied to the defendant's conductor, while in the lawful discharge of his duties as such, insulting words such as might reasonably be expected to provoke an assault, and that the assault herein complained of was made under the immediate influence of passion engendered by such insulting words, then you may consider such insulting words to the conductor in mitigation of damages, and because of them decrease by such amount as you may deem just, the sum which you would otherwise award him as damages.

"On the other hand, if you find that the insulting words by plaintiff to said conductor were themselves provoked by previous insulting words

or disrespectful treatment by said conductor to plaintiff, or if the assault was not committed under the immediate influence of passion engendered by the insulting words which caused it, but that after such words were spoken there has been time for cool reflection by said conductor, and that the said assault was the result of cool deliberation on the part of said conductor, then in either of such events the mitigating effects of such insulting words would be lost, and you should not decrease plaintiff's damage, if any, to any extent because of them."

It is insisted that this paragraph of the charge submits the same issue as that presented in the third paragraph already considered, and that thereby undue emphasis is given to the proposition therein embraced. The purpose of this paragraph is to apply the principles of law stated in the third paragraph to the facts of the case. These two paragraphs should be considered together. When so considered, it can not be said that there is any unnecessary repetition or undue emphasis of the issue therein presented. Nor is this charge subject to the objection contended for under the second proposition, in effect, that the true test is whether the passion aroused by the insulting words had subsided, and not whether there had been sufficient time for its subsidence at the time of the assault. The charge required the jury to find both that sufficient time elapsed between the use of the insulting words by appellee and the time of the assault for cool reflection, and that the assault was the result of cool deliberation on the part of the conductor, before they could ignore the mitigating effect of the insulting words by appellee towards the conductor. We think this correct.

It is further contended that all the evidence shows that the assault by the conductor upon appellee was the result of insulting language used by appellee to the conductor, and that for this reason this issue ought not to have been submitted to the jury. The true issue was whether the assault was committed under the immediate influence of passion aroused by insulting words, and this issue was properly submitted by the charge.

4. The appellant complains in its fourth assignment of error of the following clause of the general charge: "Should you find from the evidence that plaintiff was assaulted by a servant of defendant, but at the time of such assault the relation of passenger and carrier, as such relation has been above explained to you, did not exist between plaintiff and defendant, the Houston & Texas Central Railroad Company, then in that event said defendant would be in nowise responsible for said assault, and you should find for defendant. Also, if you believe from the evidence before you that at the time assaulted plaintiff was waiting on the station platform at Ennis to have a fight with the said conductor, by mutual agreement previously entered into by him and said conductor and that the fight between them, at the time and place where the same actually occurred, was the result of such previous mutual agreement to fight at that time and place, the defendant would not be liable, and you should so find."

The contention is that if the appellee and the conductor of the train agreed to a personal combat when the train should "get in," and such combat took place, the appellee could not recover, and that this charge

was error in requiring the jury to find that they agreed to have a personal combat "at the time and place" when the combat did take place. The contention is not sustained. If the appellee and the conductor agreed to have a mutual combat, and the injuries to appellee were received in a mutual combat had as a result of such agreement, then this would present a complete defense to the cause of action. It did not go in mitigation of damages, but presented a complete defense, and should have been plead by the company. No such defense was set up in the answer. Again, the evidence, in our opinion, was insufficient to raise the issue of a mutual combat. Batchler and his friend had started to go down town when the conductor, Ashe, approached from behind and began striking him on the head with an iron rod. The assault was unlawful and severe. The evidence negatives the theory of mutual combat.

5. It is insisted that the court erred in telling the jury that in determining the amount of their verdict they could take into consideration any future loss or suffering of appellee which might reasonably be expected to result from the assault, the contention being that there was no evidence authorizing such charge. Appellee testified that his fist, thumb and fingers were injured, and that "my fist will never get well and my thumb and my third finger on my right hand are stiff yet." This evidence, we think, authorized the charge.

6. The court did not err in refusing special charge number 1, requested by appellant, the refusal of which is made the basis of the sixth assignment of error. In said charge the appellant sought to have the jury instructed in substance that if the time which elapsed between the arrival of the train at the station at Ennis and the time of the attack made by Ashe on appellee was of reasonably sufficient length for appellee to have left the depot premises, then the relation of carrier and passenger had ceased to exist, and the company would not be liable. This issue was fairly submitted by the court in the main charge. Nor was there error in refusing special charge number 2, requested by appellant. The court had correctly charged the jury in the main charge what facts would constitute the relation of passenger and carrier, and that if such relation did not exist at the time of the assault, to find for defendant.

7. The fourth paragraph of the court's charge is complained of as being erroneous. This charge reads: "If a servant of a carrier of passengers unlawfully assaults a passenger of such carrier, even under the immediate influence of passion excited by insulting words of such passenger to him, it is the duty of the carrier through other servants, if others are present, promptly to protect such passengers from such assault, and put an end to it, and if the carrier fails so to protect the passenger it fails in its duty, and is liable in damages to such passenger." The objection to this charge is that it makes the carrier an insurer of the passenger's safety by the intervention of its other servants who might be present when the assault was made upon him by the conductor. The charge complained of is to be construed with other parts of the main charge and is subject to the limitations and restrictions therein. The evidence shows that other servants were present at the time of the

assault and made no attempt to stop it. In fact the evidence tends strongly to show they were anxious for the fight to proceed.

Jackson, a passenger, testified: "I tried to stop the fight at first, for I thought the conductor was killing Batchler. At the second lick I grabbed the conductor, when a railroad man grabbed me and said, 'Let them fight.' By this time I was behind several railroad men, and the other railroad men made no effort to stop the fight." If other servants of appellant were present when Batchler was assaulted by Ashe and could have protected him against the assault, it was their duty to do so. International & G. N. Ry. Co. v. Giessen, 69 S. W. Rep., 653; Texas & P. Ry. Co. v. Jones, 39 S. W. Rep., 124; White v. Norfolk, etc., Ry. Co., 44 Am. St. Rep., 489; Norfolk Railway v. Anderson, 44 Am. St. Rep., 884.

Assignments of error numbered from 9 to 14, inclusive, have been carefully considered by us, and believing them to be without merit they are overruled.

The fifteenth and sixteenth assignments complain of the verdict as being excessive. It was the province of the jury to determine the amount of damages. There is nothing in the record to show that the verdict was the result of passion or prejudice. Such being the condition of the record, we do not feel inclined to interfere with their finding. No reversible error having been pointed out, the judgment is affirmed.

*Affirmed.*

Writ of error refused.