HOUSTON & TEXAS CENTRAL RAILROAD COMPANY v. J. T. BUSH.

No. 2109. Decided January 11, 1911.

1.—Carrier—Passanger—Assault by Employee.

A railway company is not liable for an assault on a passenger by one of its servants not acting in the carrier's business and in the scope of his employment, and not charged by his employment, with the doing any part of the work or rendering the attention to the passenger due from his employer under the contract for transportation. (Pp. 28-31.)

2.—Same—Case Stated.

A porter employed at a railway station to assist in the handling of baggage and express matter, acting solely on his private grudge, entered a car and assaulted a passenger therein, the train and passenger being at such station only for the usual stop in passing through. Held, that railway company was not liable to the passenger for such act of its servant. (Pp. 27-31.)

Error to the Court of Civil Appeals, Fifth District, in an appeal from Grayson County.

Bush sued the railway company and had judgment. It was affirmed on appeal by defendant, who then obtained writ of error.

*Baker, Botts, Parker & Garwood* and *Head, Dillard, Smith & Head,* for plaintiff in error.—The undisputed evidence showing the assault upon the appellee while in the passenger coach was not in the presence of the employees in charge of and entrusted with the running of said train, and that it was wholly without their knowledge or consent, and there being no facts shown by which they could reasonably have foreseen or anticipated such assault, the company was not legally liable for the resulting damages, and the trial court erred in not instructing for the defendant. Thweat v. Railway, 71 S. W., 976; Prokop v. Railway, 79 S. W., 101; Jones v. Railway, 73 S. W., 1090; Segal v. Railway, 80 S. W., 233; Railway v. Long, 36 S. W., 485; Railway v. Dean, 98 Texas, 517; Putman v. Railway, 55 N. Y., 108; Batton v. Railway, 77 Ala., 591; Connell v. Railway, 24 S. E., 468; Muller v. Railway, 49 N. W., 249; Fulton v. Railway, 69 Iowa, 577.

The undisputed facts showing that O. J. Adams, the person who committed the assault, was not a member of the crew entrusted with the running of the train on which the appellee was a passenger, and the members of the crew not being present and having no knowledge of or reason to expect such assault, no liability is shown against the railway company on account of said assault. Gasway v. Railway, 58 Ga., 216; Hanson v. Railway, 62 Me., 84; Stewart v. Railway, 90 N. W., 588; Dwinelle v. Railway, 8 L. R. A., 224.

A carrier is not liable for an assault committed upon one who is a through passenger on its train, by a person who enters the car for the purpose of making such assault on his own account, at a station through which the train is passing, though the one making the assault is at the time in the employ of the carrier as porter at the station, but having no connection whatever with the passengers on the train. Railway v. Dean, 98 Texas, 517; Lytle v. Crescent News & Hotel Co., 66 S. W., 240; Railway v. Currie, 100 Texas, 136.

In support of the proposition that the employee was an intruder, see the following cases: Dillingham v. Russell, 73 Texas, 47; Little Miami Ry. Co. v. Wetmore, 10 Ohio St., 110; Alabama, G. S. Ry. Co. v. Harris, 14 So., 263; Bryant v. Rich, 106 Mass., 188; Railway v. Baum, 26 Ind., 70.

*E. J. Smith,* for defendant in error.—Appellee, being a passenger on appellant's train, under a contract of carriage, appellant is liable to him for damages caused by an assault of its servant Adams, although such assault was not made in the presence of or with the consent of any member of the train crew or under such circumstances that any member of the crew could reasonably have foreseen or prevented it. Railway v. Dean, 98 Texas, 517, 85 S. W., 1136; Dillingham v. Anthony, 73 Texas, 47; Railway v. Franklin, 44 S. W., 701; Railway v. Conder, 58 S. W., 58; Railway v. Washington, 30 S. W., 719; Railway v. La Prelle, 65 S. W., 488.

Mr. Justice WILLIAMS delivered the opinion of the court.

This was an action by defendant in error (plaintiff below) for damages for an assault committed on him by one of the servants of plaintiff in error (defendant). The only question is whether or not

the defendant is liable for the assault. Adams, the servant who committed it, was employed as porter at defendant's station at Groesbeck and it was his duty to assist about the baggage and express matter, in connection with passenger trains, and to receive and deliver the mail sacks carried on trains.

A train on which plaintiff, when assaulted, was travelling as a passenger between two other points, had made its usual stop at Groesbeck and that was the only reason for plaintiff's presence at that station. Adams, learning that he was on the train and acting on a personal grudge of five months standing, slipped into the car, purposely avoiding the notice of other servants of the defendant, and made the assault.

There is no contention that in assailing plaintiff he was rendering any service to defendant, or acting in the scope of his employment, or that the other servants of the defendant were guilty of any want of care in not anticipating and preventing the assault. The recovery is defended wholly upon the theory that Adams, himself a servant, in making the assault, committed a breach of the obligations of the contract of carriage between the carrier and the passenger.

In attaching such a consequence to the act of one who did not have and could not have had anything to do with executing or carrying out that contract the case goes beyond any which has come to our knowledge, except one. (Hayne v. Union Street Railway Co., 189 Mass., 551, 3 L. R. A. (N. S.), 605, 109 Am. St., 655.) In that case the conductor on a street car standing on one track, in sport threw a dead chicken at the motorman on another car standing opposite, on another track, and injured plaintiff who was a passenger on the latter car. The act of the conductor was held to constitute a breach of the contract of carriage of the company operating both cars, this holding being founded upon the broad proposition laid down in the opinion that the duty to protect passengers from assaults is not confined to those servants of the carrier immediately engaged in carrying out the contract of carriage, but is incumbent on all, at least, who are employed in the general business of transportation, and that an assault by any of these is a breach of the carrier's duty to protect.

In every other case than that just referred to that we have found, in which the carrier was held liable for an assault on the passenger by a servant, when not acting in the carrier's business and in the scope of his employment, the servant was employed about the particular premises, or conveyance, used in performing the obligations of the carrier to the particular passenger and charged with rendering some part of the various services the aggregate of which was to constitute the execution of the contract of carriage. In other words, there was delegated to the servant the doing of some part of the work, or the rendering of some part of the attention, provided for the safety, comfort, or convenience of passengers using the place or conveyance. In discussing cases of that kind judges have expressed the rule as to the liability of the carrier for the servant's mistreatment of the passenger in various language, some of it, if abstracted from the case before the court and disassociated from its context, comprehensive enough, perhaps, to impute the liability from the act of any servant

in any branch of the service whatever. But we have always supposed that such expressions had reference to such servants as those whose actions were brought in question, to whom was intrusted, in part, the execution of the carrier's undertaking with the passenger, and this is the form in which the doctrine is generally expressed. If there is no such limitation the courts have put themselves to much unnecessary trouble in trying to state the principle so as to indicate the class of servants whose misconduct is treated as a breach of the carrier's contract. It would always have been very easy to have said that the liability arose from the misconduct of any servant, or of any servant "employed in the general business of transportation," if no limitation was intended. The almost uniform modes of expression indicate to our minds the consensus that there is a limitation suggested by the nature of the carrier's undertaking and the means provided to execute it. His undertaking with each passenger, and he has no contract except with the individual passenger, is to carry him safely and to provide for his comfort and convenience, as far as can be done by the exercise of the care which the law exacts. This obligation as to a safe carriage involves the duty to exercise the requisite care to protect the passengers from assaults from all quarters, and hence the carrier himself can not commit, nor authorize the commission of, an assault without a breach of his undertaking. Most carriers perform that undertaking by servants to whom they commit the doing of everything essential thereto. Railway companies have stations in which passengers are received, and servants are there employed, each charged wth the rendition of some service which enters into the discharge of the carrier's duty to those coming to that station for transportation. These servants act for the carrier in dealing with passengers at the station where they are employed, but not elsewhere. The performance of the duty of the carrier to those taking passage at other stations is not delegated to them but to a different corps of employees. How 'then is a servant to break the contract of carriage? Since it includes the obligation to carry safely, the carrier breaks it if he makes the carriage unsafe by assaulting the passenger. The same result follows from like acts of one who stands in the carrier's place, charged with the performance of his duty; and thus, and not otherwise, servants in whose care the carrier has left the passenger may commit a breach of the contract. Certainly it will not be contended that a stranger to a contract can break it. Can it be said with greater force that a servant, or agent, who has no part either in the making or the carrying of it out, can break it? If not, how is the conduct of an employee to constitute a breach of the obligation assumed by the employer except upon the theory of authority delegated by the latter; and how can the delegation be sufficient unless it charge the employee with the duty which forbids the act? There is such a delegation to all those to whom the carrier has intrusted the execution, in whole or in part, of his contract with the passenger, because either an omission or an act of theirs which is inconsistent with his obligations is a breach thereof. To illustrate, where the relation exists either at a station, or in a conveyance, it is under the control of a corps of servants to whose care the passenger is committed by the carrier and,

as the duty of protection assumed by the carrier rests on them, individually and collectively, while the passenger is under their care, no one of them can do anything or omit anything inconsistent with that duty without breaking the contract. And the liability of the carrier for such acts or omissions, because it arises from the breach of his contract, is as absolute as is that of any other party to a contract for his breach thereof. Further than this the absolute liability in our opinion does not go. It is assumed in the case above referred to, that the carrier's contract insures the safe transportation and proper treatment of the passenger against the misconduct of all his servants, but there certainly is no such express undertaking, and whether or not it is to be implied depends on the considerations already discussed. The carrier's implied obligation is that which the law raises from the nature of his business. No statement of it, with which we are familiar will include any such absolute liability as that under consideration for the conduct of servants other than those to whom he delegates his duty. Such a liability is not one of those which arises from duties imposed by law for reasons of public policy. The law does not make the carrier an insurer of the safety of the passenger, but only requires that in order to secure it he exercise the high degree of care and skill so often defined in the books. It does not make him liable for assaults committed by others than himself or those put by him in his stead, unless they could have been anticipated and prevented by the exercise of the requisite care. He must provide an equipment and a force of employees such as that degree of care exacts in order properly to discharge each of his duties, and will be held liable for the consequences of any deficiencies in those respects, but when he has done that, there is no principle, of which we have knowledge, that requires him to hold each servant at the service of every passenger, so that every servant must be regarded as his representative in all his conduct towards the passenger. The only good reason for making the carrier responsible for the misconduct of the servant, perpetrated in his own interest and not in that of his employer nor otherwise within the scope of his employment, is that the servant is clothed with the delegated authority and charged with the duty by the carrier to execute his undertaking with the passenger. And it can not be said, we think, that there is any such delegation to the employees at a station with reference to passengers embarking at another, or travelling on the train. Of course, we are speaking only of the principle which holds a carrier responsible for wrongs done to passengers by servants acting in their own interest and not in that of the employer. That principle is not the ordinary rule, *respondeat superior,* by which the employer is held responsible only for acts or omissions of the employee in the scope of his employment; but the only reason, in our opinion, for a broader liability arises from the fact that the servant, in mistreating the passenger wholly for some private purpose of his own, in the very act, violates the contractual obligation of the employer for the performance of which he has put the employee in his place. That reason does not exist where the employee who committed the assault was never in a position in which it became his duty to his employer to represent him in discharging any duty of the

latter towards the passenger. The proposition that the carrier clothes every employee engaged in the transportation business with the comprehensive duty of protecting every passenger with whom he may. in any way come in contact, and thereby makes himself liable for every assault committed by such servant, without regard to the inquiry whether or not the passenger has come within the sphere of duty of that servant as indicated by the employment, is regarded as not only not sustained by the authorities but as being unsound and oppressive both to the employer and the employee. In the present case it may be assumed that Adams performed every duty and rendered every service which he owed to his employer and to those passengers whose safety it was incumbent on him to look after fully and perfectly, and as to everything else he was as free as any stranger. And this illustrates that, while his assault was a wrong to the individual assaulted, it was not wrongful because it was the breach of any duty which, through the contract of carriage and his own employment, he owed to the latter as a passenger, but because it was an unlawful infraction of a natural right for which he alone was responsible.

Nearly all of the authorities state the doctrine as we have endeavored to explain it. In some of the discussions it is assumed too broadly, we think, that, because the ordinary rule *respondeat superior* is not controlling, that therefore the law of principal and agent has no application at all. It must have some application when it is sought to hold one person liable in such cases for the acts of another and its just application is that which we have indicated. The general doctrine has often been discussed in this State both by this court and the courts of Civil Appeals, but none of our decisions sustain this judgment. Texas M. Ry. Co. v. Dean, 98 Texas, 520; Gulf, C. & S. F. Ry. Co. v. Luther, 90 S. W., 44, 40 Texas Civ. App., 517; Texas & P. Ry. Co. v. Tarkington, 27 Texas Civ. App., 353, 66 S. W., 137; Missouri, K. & T: Ry. Co. v. Gaines, 35 Texas Civ. App., 257; 79 S. W., 1104; Texas & P. Ry. Co. v. Bowlin, 32 S. W., 918; Houston & T. C. Ry. Co. v. Batchler, 32 Texas Civ. App., 14, 73 S. W., 981.

As matter of law we hold that the plaintiff in error is not liable for the assault and will reverse the judgment and render judgment in its favor.

*Reversed and rendered.*