## TEXAS & P. RY. CO. v. CASSIDY.

(Court of Civil Appeals of Texas. Dallas. April 29, 1911.)

CARRIERS (§ 247*) — PASSENGERS — RAILWAY MAIL CLERKS—ASSAULT BY EMPLOYÉ—CARRIER'S LIABILITY.

A railway company being bound to deliver mail from a station to a post office, and an incoming railway mail clerk being bound to accompany the mail to the office, the relation of carrier and passenger existing between him and the company continued until arrival of the mail at the post office, making the company liable for assault and battery by and insulting conduct of the porter employed by the railroad to carry the mail.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 984–993; Dec. Dig. § 247.*]

Appeal from District Court, Grayson County; B. L. Jones, Judge.

Action by P. L. Cassidy against the Texas & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

W. L. Hall and Head, Smith, Hare & Head, for appellant. Dayton B. Steed and Wolfe, Maxey, Wood & Haven, for appellee.

RAINEY, C. J. Appellee instituted this suit to recover of appellant damages in the sum of $2,000, sustained by him by reason of an assault made upon him by an employé of appellant, and by reason of said employé cursing and abusing him while appellee was under the care and protection of the defendant by virtue of a contract with the United States government. Defendant answered by general denial and, especially, contributory negligence, in that the conduct and language of the plaintiff provoked the difficulty. A trial resulted in a verdict and judgment in favor of plaintiff for $500, and defendant appeals.

A concise statement of the facts taken from appellee's brief is as follows: "Appellee was in the service of the United States government as a railway mail agent, with a run on appellant's railroad between Texarkana and Whitesboro. Appellant carried the mail from Whitesboro to Ft. Worth in a baggage car. No mail agent accompanied it. By virtue of appellant's contract with the government, all mail arriving on its trains for Whitesboro was delivered by appellant at the post office in said town. Whitesboro being the end of appellee's run, the government required him to accompany all mail that was brought in by the train upon which he worked as mail agent to the post office at Whitesboro. Prior to the time of the assault complained of in this suit, there had been some friction between appellee and appellant's station employés at Whitesboro over the transporting of the mail from the station to the post office. On account of the uncertainty and irregularity of the manner in which said mail had been transported, the government required appellant to fix some certain way of transporting the same, and appellant agreed that the mail should be carried from the station to the post office by a porter. This plan was being pursued at the time of the assault. The porter at said time was a general assistant around the Whitesboro station, helping to load and unload freight and to load and unload baggage, as well as to carry the mail between the station and the post office. The feeling was not good between appellee and appellant's station employés on account of this trouble.

On the date of the assault, appellee came in on appellant's train from Texarkana, arriving at Whitesboro about 2 p. m. There were two large sacks of mail on said train to be carried to the Whitesboro post office. They were delivered by appellee to appellant's porter, Claude Roberts, and placed by the said Claude Roberts upon a truck. Appellee alighted from said train and accompanied said truck and said mail to an open space between the sitting and baggage room of the station, when Roberts, leaving the mail in charge of appellee, went to consult the station agent, who was Roberts' superior, as to the disposition of the mail. The station agent told Roberts to take one sack of the mail to the post office and leave the other, and he (the said station agent) would send it up later. Roberts on his return to the truck picked up one sack of the mail and started off with it, when appellee asked him what he was going to do with the other sack. Roberts replied that "it was none of his God damn business." Appellee asked Roberts if he should report that to the government as a reason why one sack of the mail was left at the station. Roberts replied that he could "report any God damn thing he wanted to,"

and struck off across the station grounds toward the post office, followed by appellee; Roberts continuing to curse. When they arrived near the north edge of the station grounds, Roberts said to appellee, "this sack is damned heavy; you have been stealing pine again and putting it in the sack; you are nothing but a God damned thief anyway." Appellee replied, "You are going a little too far for a porter." This seemed to increase the anger of Roberts, and he struck appellee with the mail sack, knocking him down, and then began to throw cinders at appellee; appellee getting out of the way. Roberts finally picked up the sack of mail and took the same to the post office, appellee accompanying the same at some distance in advance; Roberts cursing appellee on the way. After they arrived at the post office, Roberts continued his cursing of appellee, and invited him out of the post office for a combat, which was declined by appellee; his reason being that under the rules and regulations he would have been discharged from the government service.

It being the duty of the appellant, under its contract with the United States government, to deliver the mail at the post office, and it being the duty of appellee to accompany all mail of which he had charge to the post office, the question arises, Did the duty of protection owing by the appellant to appellee while on the train as mail clerk between Texarkana and Whitesboro cease when the train reached Whitesboro, and the mail placed in the charge of the porter at its depot, or did said duty continue until the mail was delivered at the post office? While appellee was traveling from Texarkana to Whitesboro on appellant's train in charge of the mail, the relation of passenger of the appellant existed, and appellee was entitled to the protection of appellant's servants from assault and abuse. This relation, it seems to us, was not severed by reason of the mail being taken from the train and placed upon the truck in charge of appellant's porter at Whitesboro, and the alighting of the appellee at the same place in the discharge of his duty. The duty of the appellant, under its contract, had not changed. It was still under obligation to care for and deliver the mail at the post office. The duty of appellee to remain with the mail remained the same. The circumstances required, of necessity, that appellee and appellant's porter should be thrown together in the compliance of appellant's contract with regard to said mail being delivered at the post office; therefore we conclude that the relation of carrier and passenger existed between the appellant and appellee until so delivered; or, in other words, the appellant owed the appellee protection from the assault and abuse of its servants, and it is liable to appellee for the breach of such duty by its servant. Railway Co. v.

Wilson, 79 Tex. 371, 15 S. W. 280, 11 L. R. A. 486, 23 Am. St. Rep. 345; Railway Co. v. Lambkin, 99 S. W. 574; Railway Co. v. Dean, 98 Tex. 517, 85 S. W. 1135; Railway Co. v. Bush, 133 S. W. 245; 2 Hutch. Carriers, § 1010.

The judgment is affirmed.